## LURETTA J. BLINN *vs.* GEORGE CHESSMAN.

Argued by appellant, and submitted on brief by respondent, Jan. 20, 1892. Decided March 21, 1892.

**Name Erroneously Spelled, Deemed Adopted.**—One who accepts and places on record a conveyance of land to himself, wherein his name as grantee is erroneously written, he knowing the misnomer, is to be deemed to have adopted such name for the purpose of acquiring and holding such land, and he has no cause to complain if, in judicial proceedings against him with respect to such title, he is designated by such name. The service by publication of a summons addressed to him by such name is not for that reason invalid, and a judgment thereon is effectual as against him.

**Record Presumed Correct.**—The record of a deed, accepted and placed on record by the grantee, showing a misnomer of the grantee, *held* to justify a finding that the deed had the same defect, and that the grantee knew it.

**Sheriff's Return Construed.**—To a summons addressed to two defendants a sheriff returned that the defendants, naming them conjunctively, could not be found. This official return construed as meaning that *neither* of the defendants could be found.

Appeal by defendant, George Chessman, from an order of the District Court of Hennepin County, *Hooker*, J., made September 12, 1891, refusing a new trial.

Luretta J. Blinn, plaintiff, by her complaint alleged that she was the owner and in possession of Lot three (3) in Block eight (8) in Demmon's Addition to North Minneapolis, and that defendant, George Chessman, claimed an adverse interest or estate in it, and asked judgment determining such adverse claim. Defendant answered claiming title to the lot. On October 12, 1857, Wm. E. Forrest owned the lot, and on that day he and wife sold it to defendant, and executed and acknowledged a warranty deed of it, wherein the grantee's name was written George *Cheeseman*. Defendant George Chessman was intended as the grantee, and was the person to whom Forrest attempted to convey it, and to whom he delivered the deed.

Defendant accepted the deed knowing at the time that his name appeared therein spelled *Cheeseman*. He filed it for record in the Registry of Deeds of Hennepin County on the same day, and it was recorded in Book H of deeds, page 713, and his name was entered in the index of deeds in that office spelled as in the deed. Chessman left this state that fall soon after the date of the deed, and never returned until he came as a witness at the trial of this action. After he left the state he paid no attention to the lot, paid no taxes on it, and never conveyed it, and it has ever since remained vacant and unoccupied. He learned soon after his purchase that his title was incumbered, that this lot and seven others were mortgaged January 31, 1857, by Harlow A. Gale to J. S. Sherburne for $1,500. Believing he would have to pay a part or all of this mortgage to clear up his title, he abandoned the property and supposed the mortgage was soon after foreclosed and his title cut off. Gale however paid the debt, and the mortgage was satisfied of record November 25, 1874.

Warren R. Leonard purchased this lot at tax sales made by the county officers for delinquent taxes. The tax deeds were invalid for defects in the proceedings. On July 21, 1882, Leonard commenced an action in the District Court of Hennepin County against George *Cheeseman* and J. S. Hubbard, under the statute, 1878 G. S. ch. 75, § 2, alleging he was owner of the lot, that it was vacant and unoccu-

pied, and that *Cheeseman* and Hubbard each claimed an estate and interest in it, and asked to have such adverse claims determined and his title confirmed. The summons in that action was delivered to J. M. Eustis, Sheriff, to serve. He made return thereon as follows:

STATE OF MINNESOTA, }
COUNTY OF HENNEPIN—ss. }

I hereby certify and return that after due and diligent search, I have been unable to find the within named defendants, George *Cheeseman* and J. S. Hubbard within my said county, and the defendants aforesaid cannot be found within said Hennepin County. Dated this 21st day of July, 1882.          J. M. EUSTIS,
Sheriff of Hennepin County, Minnesota.

When this return was made and filed Leonard made an affidavit pursuant to 1878 G. S. ch. 66, § 64, subd. 5, in which he stated among other things that *Cheeseman* and Hubbard each claimed an actual interest in the lot, and that the relief demanded consisted wholly in excluding them and each of them from *any such interest*. It failed to state that the relief demanded consisted in excluding them from *any interest or lien*. The summons was published. Neither of the defendants appeared or answered. Proofs were made, findings filed, and judgment entered September 30, 1882, whereby it was decreed that Leonard was owner in fee simple of the lot, and that neither of the defendants in that action had any estate or interest in or to the lot or any part of it.

This judgment was recorded in the Registry of Deeds of Hennepin County. Leonard conveyed to Luretta J. Blinn, the plaintiff. Defendant made claim to the lot on the ground that the judgment in Leonard's suit was not a bar as to him, because he was not correctly named in it or properly served with that summons. The issues in the present case were tried July 16, 1891, before the court without a jury. Findings of fact and conclusions of law were made and filed August 4, 1891. The trial court held that the defendant George Chessman by accepting the Forrest deed knowing that the name of the grantee therein was George *Cheeseman*, adopted that as his name

so far as the lot in question was concerned, and that Leonard's action was properly brought against him by that name and that he is bound by that judgment. Defendant moved for a new trial, and being denied, appealed to this court.

*John C. Judge* and *Selden Bacon,* for appellant.

Unless the judgment obtained by publication against George *Cheeseman* is binding upon this defendant, George Chessman, he must prevail in this action. Mr. Chessman never heard of the Leonard action until after the commencement of this action. This Leonard judgment was not rendered by a court having jurisdiction. In proceedings where jurisdiction is obtained by publication, where it is sought to bar the rights of others, without actual notice, the law demands a strict compliance with the provisions of the statute. The return of the sheriff in this case is inadequate to found jurisdiction upon. *Pullen* v. *Wright,* 34 Minn. 314.

The affidavit of publication fails to comply with the provisions of the statute. The relief demanded does not consist wholly or partly in excluding the defendant from *any* interest or lien in the real estate. The relief demanded is that defendants, and each of them, be excluded from any *actual* interest or lien thereon. 1878 G. S. ch. 66, § 64, subd. 5; *Feikert* v. *Wilson,* 38 Minn. 341; *Barber* v. *Morris,* 37 Minn. 194; *Cousins* v. *Alworth,* 44 Minn. 505.

The claim is advanced that the plaintiff purchased a title apparently good on the record, and had a right to rely on it, and that defendant is estopped. This exact question has been before this court in a similar case, and it was held that the owner of the property owed no duty to those seeking to divest him of title by a judgment like that claimed here to make the record show his title. *Windom* v. *Schuppel,* 39 Minn. 35.

Another claim of the plaintiff is that an action brought against George *Cheeseman* would bind George Chessman under the doctrine of *idem sonans.* Leonard, her grantor, had no intention of bringing a suit against George Chessman, but intended to institute suit against George *Cheeseman.* These names are not *idem sonans. Cheese* does not sound like *Chess.* Landis and Landers are not *idem*

*sonans*, and no jurisdiction is acquired even by personal service in case of such a misnomer. *Atwood* v. *Landis*, 22 Minn. 558; *Lane* v. *Innes*, 43 Minn. 137.

Chessman knew nothing of the plaintiff, and had no reason to suppose that he would be sued by such a plaintiff, or by such a name. The failure of this defendant to pay attention to the lot, if it cut any figure in the matter, is fully explained by the Sherburne mortgage.

*David McC. Scribner*, for respondent.

The defendant accepted and filed for record his deed from Forrest, well knowing that his name appeared therein as George *Cheeseman*. By so doing he adopted that spelling of his name so far as the property in question was concerned. Leonard's action was properly brought against him as George *Cheeseman* and he is bound by the judgment in that action. A man may lawfully change his name. He is bound by any contract into which he may enter in his adopted or reputed name, and by his recognized name he may sue or be sued. *Linton* v. *First Nat. Bank of Kittanning*, 10 Fed. Rep. 897; *Petition of Snook*, 2 Hilt. 566; *Wooster* v. *Lyons*, 5 Blackf. 60; *Gould* v. *Barnes*, 3 Taunt. 504; *England* v. *New York Pub. Co.*, 8 Daly, 375; *Doe* v. *Yates*, 5 Barn. & Ald. 544; *Preiss* v. *Le Poidevin*, 19 Abb. N. C. 123.

*Cheeseman* and Chessman are *idem sonans*, and the published summons in that action was therefore constructive notice to appellant. The following have been held to be *idem sonans:* Berlah and Beulah, in *Lane* v. *Innes*, 43 Minn. 137; Charleston and Charlestown, in *Alvord* v. *Moffatt*, 10 Ind. 366; Jeffers and Jeffries, in *Jeffries* v. *Bartlett*, 75 Ga. 232; Woolley and Wolley, in *Power* v. *Woolley*, 21 Ark. 462; Heckman and Hackman, in *Bergman's Appeal*, 88 Pa. St. 120; Owens D. Havely and Owen D. Haverly, in *State* v. *Havely*, 21 Mo. 498; Geessler and Geissler, in *Cleaveland* v. *State*, 20 Ind. 444; Shaffer and Shafer, in *Rowe* v. *Palmer*, 29 Kan. 337; Brennan and Brenham, in *Miller* v. *Brenham*, 68 N. Y. 83.

DICKINSON, J. The land, the title to which is the subject of this action, was purchased by the defendant George Chessman from one Forrest in 1857. A deed of conveyance was executed to the defend-

ant, and he caused it to be recorded. It appears from the record of the deed, and was found by the court, that in the deed the name of the grantee was written "George *Cheeseman*," the name being so written in the instrument as recorded, as well as in the index of the same. It was found as a fact that the defendant knew, when he accepted and recorded the deed, that his name therein was thus erroneously written. In 1860 he left this state, and has ever since been a nonresident thereof. In 1882, one Leonard, claiming to own the property, commenced an action in the district court against George *Cheeseman* and one J. S. Hubbard to determine their adverse claims to the property. The summons in that action was served by publication, and upon proof of default on the part of the defendants the cause was heard, and judgment was rendered and entered adjudging the said Leonard to be the owner of the property in fee simple, and that neither of the defendants in that action had any interest in it. The plaintiff has succeeded to whatever title Leonard had, and the principal question here presented is whether that judgment against *Cheeseman* was of effect as to this defendant Chessman, as respects his title to the land.

The case justified the finding that when the defendant accepted the deed and placed it on record he knew that his name as grantee was erroneously written in it. It may be presumed as a fact that a grantee who personally accepts and retains a deed of conveyance knows the contents of it. See *Tolbert* v. *Horton*, 31 Minn. 518, (18 N. W. Rep. 647.) Whether, in such a case, the presumption would be conclusive, we do not consider. Assuming that it may be overcome by proof to the contrary, the evidence in this case opposed to the inference to be drawn from the deed and from the facts above stated was not of controlling force.

The court was right in treating the judgment as binding upon this defendant, so far as concerned his interest in this land. This conclusion is not based upon the ground of the likeness of the two names, either in spelling or in sound; but upon the ground—upon which also the decision of the court below was placed—that the defendant is to be deemed to have adopted the name of *Cheeseman* for the purpose of acquiring and holding the title to this land, and he

can have no reason to complain that he is so designated in legal proceedings calling in question the validity of the title so acquired and held. From the fact that this was not his true name it does not follow that the court did not acquire jurisdiction. If he had assumed this name, or any other, generally, and for all purposes, and especially if he had come to be known by the name assumed, there would be no doubt that legal proceedings against him in such name would, in general, be sustained. The name is not the person, but only a means of designating the person intended; and where one assumes and comes to be known by another name than that which he properly bears, that name may be effectually employed for the purpose of designating him. If such a name is employed in legal process or notices, whether served personally or by publication,—where such service is authorized,—the notice is effectual; the person who has assumed the name is presumed to understand that the process or notice addressed in that name is addressed to him.

· In this case it is probably true that the defendant did not intend to change his name, nor to adopt for general purposes the name of *Cheeseman*; but he did—if he knew the misnomer, as we must assume he did—most effectually assume that name for the purpose of taking and holding the title to this land. He not only accepted the conveyance made to himself by that name, but he placed it on record, for the purpose, and with the effect, presumably, of giving notice to the world that the title had been so conveyed and was so held. He must be deemed to have understood that thereafter persons becoming interested in the land would consult the record, and might be expected to act upon the notice thus communicated to them. If in legal proceedings concerning the title process or notice should be addressed to "George *Cheeseman*," he should respond, if he would protect his rights, although that was not his true name. In proceedings concerning this land it would be at least quite as likely that the name disclosed by the record as the grantee would be used in a summons or notice intended to be addressed to such grantee as that the record should be disregarded, and the true name of the defendant used. Hence there was as much reason why his attention should be arrested by the name of George *Cheeseman* in a published sum-

mons or notice as there would be if his true name were used. He had placed himself under the necessity of having regard to the former as well as to the latter. He cannot well complain that the name in which he took the title, and which he put forth to the world, by the records, as the name of the grantee, should be employed in proceedings instituted for an adjudication concerning that title. That name was a sufficient designation of this defendant in the action instituted by Leonard, and the misnomer did not prevent the court acquiring jurisdiction.

It is contended that the publication of the summons in the former action was not authorized, because the return of the sheriff, preliminary thereto, was that he had been unable to find "the within-named defendants George *Cheeseman and* J. S. Hubbard" within his county. It is said that this was in effect only a return that *both* of the defendants could not be found. The return should not be so construed, although that is its literal meaning. That would make the return wholly immaterial, and irresponsive to the duty resting upon the officer. It was his plain and well-understood duty to serve the summons upon each of the two defendants, and, if either of them could not be found, to so make return, stating particularly the fact. This return was an official act, and in its construction regard should be had to the maxim *omnia rite acta præsumuntur.* The language of the return, although it involves the common grammatical error of a negative pregnant, is not to be construed so as to convict the officer of either a total disregard of duty or of an attempt to deceive and mislead the court by the statement of a wholly immaterial fact,— that *both* of the defendants could not be found. Unless the return was dishonestly made, its obvious meaning was that neither of the defendants could be found; the statement that the defendants could not be found being made with respect to both of them. It should be so construed.

A point was made in respect to the sufficiency of the affidavit, preliminary to publication, which we regard as not deserving serious consideration.

Order affirmed.

(Opinion published 51 N. W. Rep. 666.)