# ELIZABETH A. HARTMAN *vs.* H. OLIVER THOMP-SON, ADMINISTRATOR OF J. B. McKIM.

*Validity of Deed to Person Under Assumed Name—Assignment by Owner of Leasehold to Avoid Liability for Rent—Delivery and Acceptance of Deed—Declarations of Agent—Instructions.*

A deed executed to an existing person under an assumed or fictitious name is valid and transfers title.

A man may make a contract under any name he chooses to assume and when his identity is established the act will be binding upon him and others.

The assignee of a leasehold interest in land may assign it to another for the express purpose of avoiding future liability for rent, provided the conveyance is designed by both parties to vest the property in the grantee.

Snch assignment is not a fraud upon the owner of the reversion and there is no principle of law which requires the holder of the term to retain it for the purpose of protecting the landlord.

Declarations of an agent made after the transaction to which his agency related is closed are not admissible in evidence.

The agency of a husband for his wife is not more extensive in scope or longer in duration than that of any other agent similarly constituted.

The acknowledgment and recording of a deed is *prima facie* evidence of delivery and acceptance.

A woman who owned a leasehold interest in a lot of ground authorized her husband to sell the same. He made a contract to sell it to one G who directed that the deed of assignment be made in the name of James Moore. G gave his promissory note for the purchase-price. The assignment was executed in the name of James Moore, the assignor acting in good faith, believing that to be the name of the purchaser. The deed was recorded and subsequently delivered to G who accepted the same, claimed to be the owner of the property and endeavored to rent it. In an action by the landlord against the assignor to recover rent which accrued after the assignment, *held*, that the evidence is legally sufficient to prove these facts and if found by the jury the plaintiff is not entitled to recover.

*Held*, further, that if the purchaser G directed the assignment to be made in the name of Louis Moore, the conveyance to him in the name of James Moore is nevertheless valid since he accepted the same.

A prayer does not submit a question of law to the jury by requiring them to find that a deed was "a good and sufficient conveyance" when it is apparent from the prayer as a whole that the question submitted was whether the conveyance was made in good faith.

*Decided November 16th, 1906.*

Appeal from the Court of Common Pleas (DOBLER, J.)

*Defendant's 1st Prayer.*—If the jury shall find from the evidence that the defendant executed, acknowledged and recorded a deed of which a certified copy has been offered in evidence, and, that in executing said deed, and recording the same, the defendant intended to convey the property mentioned therein, to the person who testified that his name is Louis F. Grafflin, and if they shall further find that the said Louis F. Grafflin agreed with the husband of the defendant, as agent of the defendant, to purchase said property in the name of James Moore, and that the said executing, acknowledging and recording (if they shall find the same) were for the purpose of carrying out the said agreement, and said Grafflin afterwards had possession of said deed and claimed said property thereunder, their verdict must be for the defendant; and the jury are further instructed that the paper offered in evidence, and purporting to be a certified copy of a deed from the defendant to James Moore, is evidence that the original deed of which said paper purports to be a copy, was duly executed and acknowledged on the date named in said copy, and that the same was delivered by her, and that the deed was recorded on the date shown by the copy. (*Rejected.*)

*Defendant's 2nd Prayer.*—If the jury shall find from the evidence that the defendant executed, acknowledged and recorded a deed of which a certified copy has been offered in evidence, and, that in executing said deed, and recording the same, the defendant intended to convey the property mentioned therein, to the person who testified that his name is Louis F. Grafflin, and if they shall further find that the said Louis F. Grafflin agreed with the husband of the defendant, as agent of the defendant, to purchase said property in the name

of Louis Moore, and that the said executing, acknowledging and recording (if they shall find the same) were for the purpose of carrying out the said agreement, and said Graffllin afterwards had possession of said deed and claimed said property thereunder, their verdict must be for the defendant; and the jury are further instructed that the paper offered in evidence and purporting to be a certified copy of a deed from the defendant to James Moore, is evidence that the original deed of which said paper purports to be a copy was duly executed and acknowledged on the date named in said copy, and that the same was delivered by her, and that the deed was recorded on the date shown by the copy. (*Rejected.*)

The cause was argued before McSherry, C. J., Briscoe, Boyd, Pearce, Schmucker and Jones, JJ.

*S. Gross Horwitz* (with whom was *Wm. E. Schloegel* on the brief), for the appellant.

This appeal presents two inquiries—one a question of law, namely, whether when the assignee of a leasehold interest executes a deed of assignment to an assignee in an assumed name the deed is effective to convey the title from the grantor and to vest it in the assignee so as to relieve the grantor of the obligation to pay subsequently accruing rent; the other is a question of fact, namely, whether the evidence in this case is sufficient to establish that the appellant did, prior to the accrual of the rent sued for, convey the leasehold interest mentioned in the declaration to a third person in an assumed name.

That a conveyance to one in an assumed name is valid is established by all the authorities. *Wilson* v. *White*, 84 Cal. 242; *Thomas* v. *Wyatt*, 31 Mo. 188; *Blinn* v. *Chessman*, 49 Minn. 145; *Staak* v. *Sigelkow*, 12 Wis. 234; *David* v. *Williamson*, 83 N. Y. 268, 269; *Salmer* v. *Lathrop*, 10 South Dakota, 224; *Graham* v. *Eizner*, 28 Ill. Apps. 273; *Filton* v. *Inhabitants of Hamilton City*, 6 Nevada, 196; 3 *Wash. Real Property*, secs. 2116, 2117 (6 ed.); 1 *Devlin on Deeds*, sec. 191.

There is, indeed, a distinction noted by the authorities be-

tween a deed to a fictitious person, and a deed to a real per-, son, in an assumed name. The former is void, the latter valid. *Thomas* v. *Wyatt, supra; David* v. *Williamson, supra.*

Even in the case of a corporation, a deed in which the corporation is described by a fictitious name is valid, and in a suit by or against the corporation based on the deed, the true name of the corporation may be connected with the false one by appropriate averments. *Bernstine* v. *Hobleman,* 70 Md. 38, 39; *Keen* v. *Whittington,* 40 Md. 495.

And more extraordinary still a judgment against a person in an erroneous name is valid. *First National Bank* v. *Jaggers,* 31 Md. 47.

It being established, then, that a deed to one in a fictitious name is valid *inter partes,* it is not difficult to demonstrate that an assignment by a tenant to a third person under an assumed name, is valid even against the landlord, and will defeat the landlord's right to hold the assignor for subsequently accruing rent.

The only relationship existing between a tenant, not an original lessee, and his landlord, grows out of *privity of estate.* There is no *privity of contract* between them. *Donaldson* v. *Polk,* 64 Md. 504; *Reid* v. *Weissner,* 88 Md. 236; *Woodfall, Landlord & Tenant,* p. 262.

The liability of such tenant arises wholly from his relationship to the land, not from his relationship to the lessor, and when his relationship to the land is severed, it puts an end to his liability for rent. *Ibid.*

Now, it has already been shown that a man may sever his relationship to land by a deed to a third person in a fictitious name. Hence, when a tenant executes such a deed, his relationship to the land being severed, the obligation to pay subsequently accruing rent must also be at an end, for the obligation to pay rent having arisen wholly from his relationship to the land, the obligation must cease when his relationship to the land is terminated.

In *Tovey* v. *Pitcher,* 1 Carthew's Rep. 177, the defendant in an action for rent pleaded that before the rent accrued he had

assigned to one Mott. The plaintiff demurred on the ground that no notice of the assignment had been given him by the defendant, and that there was no implied notice, for public registration of deeds was not at that time provided for.

The lower Court was divided. Some of the judges thought that if no notice was given, the landlord might never find the person against whom to bring his action. "But," said LORD HOLT, on appeal, "the assignee was not bound to give notice to the lessor, but the assignment was complete without notice." And so judgment went in favor of the defendant.

To the same effect are *O'Dell* v. *Wake*, 3 Campbell 394 (per LORD ELLENBOROUGH); 1 *Wms. Saunders* (6 ed.), 241 d.; 2 *Taylor, Landlord and Tenant,* 452-3; *Lekeux* v. *Nash*, 2 Strange, 1221; *Poe's Pleading*, 388.

The liability of the original lessee was all that the landlord enjoyed at the execution of the lease, and if, upon an assignment being made by the lessee, the law gives to the landlord an additional remedy, namely a remedy against the assignee during the time the assignee holds the land, no complaint can successfully be made by the landlord if the law also terminates the assignee's liability when, by a deed valid to carry away the title to another, the assignee severs his relationship to the land.

Abundant protection still remains to the landlord. He may, in the *first* place, sue the original lessee in an action of covenant for the rent in arrear. *Consumers Ice Co.* v. *Bixler*, 84 Md. 437. *Secondly*, he may re-enter and terminate the lease by an action of ejectment. *Thirdly*, he may distrain. *Fourthly*, he may, by ascertaining the true identity of the assignee, sue him for the rent accrued during his tenancy.

The propriety of the rule for which we contend is still more strongly shown by the circumstance that it can never be the duty of a grantor to search baptismal registers to ascertain the true name of a prospective purchaser. In nine transactions out of ten the grantor does not know the grantee, and to impose on the grantor the duty to ascertain, at his peril, the grantee's baptismal name, would immeasurably embarrass real estate transactions.

At the conclusion of the case two contentions were made by the plaintiff—first, that there was no evidence that Grafflin ever did agree to accept the property in the name of Moore, and, secondly, that if he did, the deed was never delivered to him. With Grafflin's letters staring us in the face and Mr. Schloegel's positive testimony that Grafflin acknowledged that he had purchased the property under the name of James Moore, it would seem superfluous to dwell on the first contention of the appellee. Despite the efforts of Grafflin to avoid acknowledging he had purchased the property in the name of James Moore, he is forced in the end to admit it freely by acknowledging that he wrote the two letters offered in evidence and that they contain the truth. There was no objection to the admission of these letters, nor could there have been. *Bowen* v. *Tipton*, 64 Md. 286.

After the deed was executed Grafflin took possession of the property by causing a "For Rent" sign to be placed upon it, in itself *prima facie* evidence of title and of acceptance of the conveyance in the name of Moore. *Franklin Insurance Co.* v. *Chicago Ice Co.*, 36 Md. 122.

The argument was that as the deed had not been handed to Grafflin prior to being recorded; as it had been put on record not by Grafflin, but by Schloegel or Hartman, there had been no delivery to Grafflin, and, as there had been no delivery, the deed was inoperative to convey title to Grafflin. Delivery, however, has no such meaning as that ascribed to it by the appellee. In his view delivery is a manual tradition, a transmission of possession, whereby the deed must not only leave the custody of the grantor, *but come into the possession of the grantee.* This is an entire mistake. It is true that the deed must leave the custody of the grantor; but it need never come into the custody of the grantee. When once the grantor has parted with possession of the deed, when once he has placed it in the custody of a third person with the intention that it shall transfer title to the grantee, the deed is completely delivered; and no further act is essential on the part of the grantor. It is true that mere delivery will not, in the absence

of assent by thè grantee, operate to vest title in the grantee. But if the grantee does assent, his assent, which is then known as an acceptance, completes the transaction, and the title passes.

Delivery, then, is an act which relates wholly to the grantor, and the grantee need have no part whatever in it. The grantee merely assents to the delivery, and when he does assent, the assent becomes an acceptance, and the title passes, though the grantee has never seen the deed, *Doe, demisee of Garnons* v. *Knight*, 5 B. & C. 671. *Tomkins* v. *Wheeler*, 16 Peters, 119, holds that delivery of a deed to a clerk of the records to be recorded is a full delivery to the grantee. Similar in all respects are the decisions of this Court. *Stewart* v. *Redditt*, 3 Md. 79; *Hutchins* v. *Dixon*, 11 Md. 41.

Delivery, then, being fully established by the testimony, it remains only to inquire whether there was an acceptance by the grantee. The cases above cited show that the recording of a deed is not only conclusive evidence of delivery, but *prima facie* evidence of the other step essential to the completion of the transaction, namely, acceptance by the grantee. *Stewart* v. *Redditt*, 3 Md. 79; *Warner* v. *Hardy*, 6 Md. 537; *Hutchins* v. *Dixon*, 11 Md. 41.

To defeat this *prima facie* evidence, affirmative evidence that he did not accept the deed must be furnished by the grantee. But, instead of such affirmative evidence, we have conclusive evidence that he did accept it, as furnished, first, by his two letters claiming title to the property under the deed, and, secondly, by the testimony of Mr. Schloegel that Grafflin admitted taking title to the property by that deed, that he paid $100 for it, and went into occupancy of it

There is another aspect of the question whether the deed was delivered and was accepted by Grafflin. Mr. Schloegel testified that Mr. Hartman, who, as agent of his wife, sold the property, was the *attorney* of Mr. Grafflin to draw the deed in the name of Moore and to obtain the conveyance. There was no contradiction of this testimony. Hence when Mr. Hart-man obtained possession of the deed and directed it to be re-

corded, and this was done, there was a complete acceptance of the deed by Grafflin through his agent, Hartman.

The plaintiff by his first prayer, asked the Court to instruct the jury that he was entitled to recover the ground rent and taxes accrued prior to the institution of the suit unless they find that prior to the accrual of said amounts, the defendant had "assigned the leasehold interest in said lot of ground *by a good and sufficient conveyance thereof*, in good faith divesting herself of all estate and interest in and control over said lot of ground." This prayer was sound in theory, but it was faulty in submitting a question of law to the jury. The defendant had by her plea of confession and avoidance, admitted that the reversion belonged to the plaintiff, and that he was entitled to the rent and taxes from some one, but not from her, for prior to their accrual she had transferred away the term by a deed duly signed, sealed, acknowledged and recorded. The deed was offered in evidence, or rather, a certified copy of it, which proved itself, *Warner* v. *Hardy*, 6 Md. 537, and the contention of the plaintiff was that the deed was void because Grafflin had not accepted it as James Moore. Hence the only question to be submitted to the jury was whether Grafflin did accept the deed in the name of James Moore. It was error to submit to the jury the question whether Mrs. Hartman did by *a good and sufficient deed*, convey the lot. That was a question of law, and Mrs. Hartman specially excepted to the submission of that question to the jury; but her exception was overruled. That it ought to have been sustained is clear from the authorities. *Richards* v. *Meyer*, 75 Md. 24; *Gusdorf* v. *Duncan*, 94 Md. 168; *Jackson* v. *Jackson*, 80 Md. 191.

*W. Hall Harris* and *H. W. Fox* for the appellee.

The soundness of the defense depends upon the effect proper to be given, under all the evidence contained in the record, to the assignment alleged to have been executed and delivered by the appellant to an entirely and confessedly fictitious assignee therein described as "James Moore," said assignment having been drawn by one of the attorneys of the

appellant, at the appellant's expense, acknowledged and placed on record by her, and shown never to have been delivered to this mythical assignee or anyone shown by the evidence to represent him, although it was subsequently in the possession of one of said attorneys of the appellant, who then, as he testified, claimed to hold it as attorney for said Louis F. Grafflin.

· The contention of the defendant below (appellant) was that said assignment although made to the confessedly imaginary "James Moore," should be held valid and effectual to convey and vest said term in said Louis F. Grafflin whom she alleged to have been known by the name of "James Moore," and to have been the same person as "James Moore."

The point thus presented is of the finest, and the issue of the most extreme narrowness as matter of law; but having been raised by plea of confession and avoidance, the burden of establishing the affirmative of the proposition rests upon the defendant (appellant),—*Frederick Institution* v. *John S. Michael*, 81 Md. 487-505—and this burden, it is submitted, she has wholly failed to sustain.

The case of *Condon* v. *Sprigg*, 78 Md. 330-334, is very similar to the case at bar. Here Grafflin had agreed to purchase the leasehold interest from Jacob G. Hartman, agent for defendant (appellant), but because there were judgments against him, could not take title in his own name, and therefore directed the title to be placed in the name of his friend, Louis Moore. In the case of *Condon* v. *Sprigg*, Haines, who shared offices with Levi Z. Condon, purchased two lots from Holland, but like Grafflin, on account of judgments or debts, could not take title in his own name, and had the property deeded to Levi Z. Condon. If Hartman had not inserted the name of "James Moore" as grantee in the deed offered in evidence in this case, instead of that of Louis Moore, the two cases up to this stage would have been identical; but Grafflin testified that the party he had selected as grantee would not have the property, hence, even though no mistake in the name of the grantee had been made, title would not have passed, because the grantee was not willing to accept it. So, if Condon had

not done certain acts inconsistent with his repudiation of title, none would have passed to him under the deed Haines had caused to be prepared naming him as grantee.

In the Condon case, the prayer which was granted, and which this Court approved, states that: "If the jury find the witness Haines put property mentioned in the deed from Holland to the defendant (Condon) in the name of the defendant, without his consent, and that he never assented to, or accepted said deed nor accepted said conveyance to him, and that he executed the two other deeds described in the evidence only for the purpose of disclaiming said property in said deeds described and getting the same out of his name, then their verdict ought to be for the defendant."

In further support of the appellee's contention that no legal title to leasehold property in question passed out of the defendant by the deed of assignment offered in evidence, we submit the following authorities, viz: *Parties to deed.* The name of the grantor and grantee must be stated in a valid deed. Code, page 505. *Delivery.* It is essential for every deed to convey title, that it be delivered. *Duer* v. *James*, 42 Md. 494. And such delivery must be proved. *Clark* v. *Ray*, 1 H. & J. 318.

*Recording.* That recording is but *prima facie* evidence of delivery and may be rebutted. *Yonng* v. *Guilbiau*, 3 Wall. 641; *Crawford* v. *State, &c.*, 6 H. & J. 234; *Leppoc* v. *Union Bank*, 32 Md. 143; *Barry* v. *Hoffman*, 6 Md. 97; *Stokes* v. *Dietrick*, 75 Md. 264. That recording cannot charge grantee, unless made with his assent. *Leppoc* v. *Union Bank*, 32 Md. 137; *Condon* v. *Sprigg*, 78 Md. 330. That acceptance by the grantee is as essential to the validity of a conveyance as delivery by the grantor. *Smith on Contracts*, mar. p. 6, note 1.

The whole contention of the appellant hinges upon the proposition, repeatedly and unqualifiedly stated, that "a man may change his own name," which may be admitted only with the qualification of LORD TENTERTEN, "*provided no fraud be committed thereby*, and it is believed that the cases cited by the appellant to sustain this position in its unqualified form

will be found insufficient for the purpose and merely to afford instances in which the party grantee was held estopped to deny delivery to and acceptance of title by him under some other than his correct or recognized name, because he had assumed to convey the property or otherwise to deal with it in some manner wholly inconsistent with such denial, and in which the party grantor had in fact wholly parted with control of and interest in the property, conditions which in nowise exist in the case at bar, for Graffin repudiated and refused to accept the assignment in the name of "James Moore,"—he never assumed to convey it or to deal with it in any manner inconsistent with such repudiation and refusal, and he never could have acquired legal title to it by virtue of the assignment to "James Moore."

It is respectfully submitted and earnestly contended that the rulings of the Court below should be affirmed, and it is confidently believed that this Court will never in anywise lend its sanction to so unworthy a transaction as was sought to be effected by the attempted assignment of the term in this case, nor permit dishonest assignees of lessees hereafter at once to escape their own responsibilities and to place leasehold titles in such situation that they may be further assigned only by further fraud, by the mere adoption of the simple expedient employed by this defendant, of executing and placing on record, of their own motion, at their own expense and without delivery, assignments of terms to mere figments of their imaginations.

PEARCE, J., delivered the opinion of the Court.

This suit was brought for the recovery by the appellee's decedent of certain installments of ground rent then due and unpaid, issuing out of a lot of land in Baltimore City on Pen Lucy avenue, under a renewable ninety-nine year lease, together with certain taxes chargeable against said property which had been paid by the appellee's decedent for the protection of his interest in said property. This lease was made June 29th, 1892, by Samuel C. Houlton, to Augustus D.

Clemens, and reserved a yearly rent of ninety dollars, payable in two equal installments July 1st and January 1st in each year, and contained the usual covenants by the lessee, his personal representatives and assigns for the payment of the rent, and all taxes and assessments on the demised premises, when legally demandable. The reversion in this lot had become vested at the time of this suit, by mesne assignments in the appellee's decedent, and the leasehold, in like manner, sometime before the institution of this suit, had become vested in the appellant. When the suit was brought, there were due and unpaid three installments of rent amounting to $135, as also $60.22 taxes paid by the appellee's decedent for the protection of the reversion.

To the declaration of the plaintiff, the defendant pleaded that before any of the rent and taxes sued for had become due and demandable, "she jointly with her husband, Jacob G. Hartman, assigned to one James Moore, otherwise known as Louis F. Grafflin, by deed duly executed, acknowledged, delivered and recorded, the said leasehold interest; and the said James Moore is the same person as Louis F. Grafflin; and the plaintiff long prior to the institution of this suit, was informed that said Grafflin was the same person as said Moore, and that he had accepted title to said property in the name of said Moore." The appellee filed a replication denying all the allegations of the plea, and on this, the issue was joined, the other matters alleged in the declaration being admitted by the pleadings. *Zihlman* v. *Cumberland Glass Co.*, 74 Md. 307. The sole question in the case raised by the pleadings, is whether the effect of the alleged assignment to Louis F. Grafflin under the name of James Moore, was to vest the leasehold estate in said Grafflin. If it did, the liability of Mrs. Hartman, resting only in privity of estate, was at an end. If it did not, her liability continued, and upon this issue the burden of proof is upon the appellant. 1 *Greenleaf on Evidence*, sec. 74; 1 *Jones on Evidence*, sec. 176; *Frederick Institute* v. *Michael*, 81 Md. 505. It is admitted by written agreement, that Mrs. Hartman, who lived in South Dakota at the time of the trial, would, if pres-

ent, have testified that she placed this property in the hands of her husband, Jacob G. Hartman, for sale by him as her agent; that the deed of assignment mentioned in the plea was presented to her for execution, by her husband, and that she executed it, believing that the "James Moore named as grantee therein, was the true name of the actual purchaser." The deposition of her husband was offered in evidence, but was properly excluded, because the name of the witness was not inserted in the notice of the names of the witnesses proposed to be examined. Only two witnesses testified in the case, William E. Schloegel, one of the appellant's attorneys, called on her behalf, and Louis F. Grafflin, the alleged assignee of the leasehold estate, called on behalf of the appellee. At the close of the case, the plaintiff offered two prayers, the first requiring the jury to find all the facts necessary to warrant a recovery, if no assignment of the term had been set up, and then instructing them to find their verdict for plaintiff, for such rent and taxes as they should find to have been due and payable when suit was brought, unless they should further find that before suit was brought, the defendant had assigned the leasehold interest in said lot "by a good and sufficient conveyance thereof, in good faith divesting herself of all estate and interest in, and control over said lot of land." The second prayer instructed the jury that there was no evidence in the cause legally sufficient to show that the defendant had in good faith divested herself of all estate and interest in, and control over the said lot of land, and both these prayers were granted. The defendant offered two prayers both of which were rejected, and which will be set out by the Reporter. The defendant specially excepted to the plaintiff's first prayer because she alleged it submitted to the jury a question of law, viz., whether the defendant by a good and sufficient conveyance assigned the leasehold interest in the lot in question. This motion was overruled, to which the defendant excepted—as well as to the granting of the plaintiff's two prayers and the rejection of her own two prayers, and the verdict and judgment being against her she has appealed. Four

exceptions were taken to the admission of testimony, which will be mentioned later.

The general principles applicable to the main question in this case are sufficiently established, and are not the subject of serious controversy between counsel. The difficulty lies only in dealing with the testimony. Mr. Washburn in his work on Real Estate, vol. 3, sec. 2116, (6th ed.) says, "The object of names being merely to distinguish one person from another, it seems to be sufficient if this is effected, though the true name of the party be not used, or even no name at all." In 1 *Devlin on Deeds*, sec. 191, it is said, "A patent issued to a person under an assumed name is not void, and a conveyance by such person under his assumed name will transfer title. But if issued to a person not in existence, the patent would be a nullity." This qualification is obviously a necessary one, because a grantee is as necessary to the conveyance of land as a grantor. In note d, to the case of *Davis* v. *Hollinsworth*, 84 Amer. St. Rep. 238 (Ga.) the editor Mr. Freeman, says: "Care must be taken to distinguish between a deed to a fictitious person who has no existence, and one to a person in existence, the conveyance being made to him by a fictitious name. If a person is in existence and ascertained, a conveyance to him by a fictitious name will pass title. In such a case, if the grantee is in existence and can be identified, it is immaterial by what name he may be called, and he may even assume a name for the occasion." In *Thomas* v. *Wyatt*, 31 Mo. 188, a patent was issued to Samuel Johnson, and in an ejectment suit by one claiming under a conveyance from Samuel Johnson, the proof being that Samuel Johnson was an assumed name of James Coleman, and not a fictitious person, the plaintiff was held to have good title.

In *Blinn* v. *Chessman*, 49 Minn. 140, it was held that one who accepts a conveyance in which his name is not correctly stated, is deemed to have adopted that name for the purpose of acquiring and holding title to the property. The Court said, "The name is not the person, and where one assumes, or comes to be known by, another name than that which he

properly bears, that name may be effectually employed for the purpose of designating him."

The case of *David* v. *Williamsburg Fire Ins. Co.*, 83 N. Y. 265, is an instructive discussion by JUDGE EARL of the principles involved. Henry David conveyed the insured premises to Marx David who was a fictitious person, and afterwards Henry David, in the name of Marx David, conveyed them to Henry's wife, Caroline David. In an action by her upon a fire policy on the premises, the trial Court charged that if the jury believed that Marx David was a mythical person, or that there was no such real person, and that he never executed the conveyance to the plaintiff, it was an end of plaintiff's case, and they must find for defendant. On appeal this was held error, the Court saying: "In considering this case it must be assumed that the deed was delivered, and that Mrs. David took possession of the property claiming to be the owner as there was proof tending to show those facts. It must also be assumed, as nothing to the contrary appears, that Henry David executed the conveyance with the intention to vest title in the plaintiff, In *Petition of John Snook*, 2 Hilton, 566, CHIEF JUSTICE DALY went at length, and with much learning, into the subject, and summed up his conclusion in these words: "All that the law looks to is the identity of the individual, and when this is clearly established, the act will be binding upon him *and upon others.*" This statement of the law is substantially approved in *Bernstein* v. *Hobelman*, 70 Md. 39, where the Court quotes *African Soc.* v. *Varick*, 13 Johnson, 38, to the effect that where a deed is made to a corporation by a name other than the true name, the plaintiffs may sue in their true name and aver in the declaration that the defendant made the deed to them by the name mentioned in the deed. As there is no privity of contract between the assignee of the reversion under such a lease as the present, and the assignee of the term, there is no reason why the liability of the latter should not be as effectually destroyed by a deed made in good faith to one under an assumed name, as if made to the grantee by his true name. It is not a fraud

upon the owner of the reversion, if the owner of the term assign it to another for the express purpose of terminating his future liability for rent, provided the conveyance is designed by both parties to divest the estate of the grantor and vest it in the grantee. There is no principle of law or morals which can require the termor to retain the term for the protection of the owner of the reversion, if he thinks it to his advantage to dispose of it, and it is not material that his grantee has no financial responsibility. In *Scanlan* v. *Grimmer*, 71 Minn. 351, it was held that one not engaged in a fraudulent or criminal purpose, may enter into a contract under any name he may choose to assume, and that when his identity is established, the act will be binding upon him and upon others. In that case, Davis, who was the real mortgagee in a *bona fide* mortgage, for the purpose of that transaction, assumed the name of Alexander as mortgagee, and the mortgage was subsequently assigned in good faith, and for value to Grimmer. The mortgagors, sought to set aside and cancel this mortgage, because they were misled and intended to mortgage the land to Alexander and not to Davis, and the Court below so ordered. On appeal this was reversed, the Court saying, "The Court below failed to apply the true and well settled rule to the facts. It overlooked the distinction between the assumed name of a person actually identified, and a wholly fictitious name without an identified person behind it. In assuming a name in a business transaction, Davis was not engaged in a fraudulent or criminal purpose, and he could bind himself as well as other persons by its adoption and use."

Now what does the testimony show to be the true transaction between Mrs. Hartman and Grafflin. We have seen that it is admitted she would have testified if present that she authorized her husband as her agent to sell the leasehold estate, and that when she executed the deed in question she believed that James Moore was the true name of the actual purchaser.

Wm. E. Schloegel testified that he was an attorney at law, that he knew Louis F. Grafflin; that he drew the deed in question under instruction from Mr. Hartman, who paid the cost

of drawing and recording; that he, the witness, placed it on record, and that both Hartman and Grafflin acknowledged in his presence that the consideration money named in the deed was paid, and that Grafflin acknowledged to him that he bought the property in the name of James Moore, and that the witness knew Grafflin after the recording had the deed in his possession, and accepted it as such, and that two or three months thereafter, Grafflin came to him to know if he had no right to the property under that name; that some parties were attacking the title, and he wished to know if he would not have an action of damages against them. This witness further testified that he drew the deed to James Moore by Hartman's direction, and that he did not know whether there was any such person as James Moore in existence except from what Grafflin said, and that Hartman told him he had sold the property to Grafflin, and Grafflin directed Hartman to make the deed to James Moore. He also testified that after filing the deed for record, he sent the ticket for the deed to Grafflin by Hartman's direction, and that Grafflin told him he gave $100 for the property, and gave his note for that amount, and that the witness knew Grafflin took possession and put up a sign on the property. "For sale, Apply to Mr. Grafflin," and that he understood Grafflin was a real estate man.

Louis F. Grafflin testified in chief that he had been for 20 years in the real estate business in Baltimore, that he had never been known by the name of James Moore, and knew no one of that name, and that he never directed any property to be conveyed to him by the name of *James* Moore. He admitted the deed in question, after recording, was in his possession, but that it would never have been recorded if he had seen it beforehand; that he and Hartman both went to see a party who would like to buy it, but they could not find James Moore and could not make any title to it.

On cross-examination, he said he thought he told Hartman to make the deed to Louis Moore, and finally admitted specifically that he directed Hartman to have the deed made to some Moore, and after an examination covering six pages of

the printed record, he said, "Yes Sir. I agreed to purchase it in the name of Mr. Moore," and that after the deed was recorded and sent, to his house he accepted it. He also admitted that he signed a written statement, offered and admitted in evidence, in which he said "I agreed to give $100 for the Penn Lucy Lot, and had the deed made to Moore. * * * Being ill at that time, and fearing that Al Horner would give me trouble with all my property, which he has done, I ordered the deed made as above." He also admitted he wrote and signed a letter offered and admitted in evidence addressed to Mr. Schloegel, February 16th, 1901, in which he asked, "Haven't I some redress in the Penn Lucy Lot transaction? I buy a lot, and when I try to sell it I find the man who collects the ground rent has informed my would be purchaser the title is not valid. Let me know what rights I have."

On re-direct examination he was asked if Hartman ever offered to produce James Moore, to which the defendant objected, and his objection was overruled, to which the first exception was taken, and the witness answered that Hartman hunted up several James Moores, but he did not know them and would have nothing to do with them. The second exception was to the question whether Hartman gave him a list of James Moores and for what purpose, to which he answered that he did, in order to perfect the title. The third exception was to the question. "What did Hartman propose that any of these James Moores should do to perfect the title?" To which he replied "we could give some one a small amount to take the place of James Moore and sign the deed." The fourth exception was to a question as to what he had stated about an effort made by Hartman and himself to sell the property to a lady, and what was the difficulty in effecting a sale to her, to which he replied. "What was stated in one of those letters, that the title was imperfect?"

It must be borne in mind that the only duty which the assignee of a leasehold estate owes the reversioner, is the payment of the stipulated rent accruing due, and the taxes becoming demandable, so long, and so long only, as he continues

to be the owner of the leasehold estate.   Whenever he divests himself of this estate by a valid assignment to another, even though it be without a valuable consideration, the reversioner cannot complain.   The creditors of the assignee might, in a proper proceeding, attack an assignment made without proper consideration, but the reversioner could not do so.   What might be held a fraud upon them, could not be so held as against him.   Mr. Poe says in sec. 388 of his work on Pleading that a real assignment, under which the party retains in himself no beneficial interest, "even when made to a pauper and for the express purpose of escaping further liability will not be thereby rendered fraudulent, if the act be really designed to operate as it appears."   It is therefore vain to appeal to this Court in the language of the appellee not to "lend its sanction to so unworthy a transaction as was sought to be effected by the attempted assignment of the term in this case." The only question for our consideration is whether the case was properly submitted to the jury to determine whether the assignment was a real and *bona fide* assignment, and if was such, neither the Court nor the jury were concerned with the motives which influenced the one in conveying and the other in receiving the transfer of the title.

The four exceptions to testimony may be considered together.   Each of these exceptions were taken to questions propounded to Grafflin for the purpose of introducing the acts and declarations of Hartman as agent of his wife in reference to the sale, long after the transaction was closed, and his agency was terminated.   But the evidence is clear that his agency was only to sell the property, and that the deed had been executed by Mrs. Hartman, the consideration paid by Grafflin passing to her his promissory note therefor for $100, and the deed recorded and accepted by him, long before the acts and declarations of Hartman sought to be introduced. It was only during the course of the negotiations which culminated in this sale and conveyance, that Hartman could be regarded as the agent of his wife.   "The declarations of an agent are admissible only because treated as the declarations

of the principal, and the latter is bound by them only while the former is acting within the scope of the duties for which he was employed. When these duties are ended, his representative character of necessity ceases." *Phelps* v. *Georges Creek R. R. Co.*, 60 Md. 550. "Declarations or admissions of an agent by his own authority, and not accompanying the making of a contract, or the doing of an act in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding on his principal, and are not admissible in evidence. *Bank* v. *Steam Navigation Co.*, 11 G. & J. 34. There is no authority or reason for treating the agency of a husband for his wife as more extensive in scope, or longer in duration, than that of any other agent similarly constituted. The ruling upon each of these exceptions was therefore erroneous.

We discover no defect of proof as to delivery of this conveyance. "No precise form of delivery need be resorted to. It may be actual or verbal. Acknowledgment, and recording are sufficient to warrant presumption of a legal delivery by the grantor." *Stewart* v. *Redditt*, 3 Md. 79.

The possession of the clerk, after recording, will be regarded as the possession of the grantee. *Idem.* "A certified copy of an instrument required by law to be recorded, proves itself as *prima facie* evidence of all circumstances necessary to give it validity." *Warner* v. *Hardy*, 6 Md. 525; *Hutchins* v. *Dixon*, 11 Md. 41.

There is nothing in this case to defeat or rebut this *prima facie* evidence. On the contrary, the evidence is that Grafflin accepted the conveyance. He paid the agreed price by his own promissory note. He accepted the recording ticket, and subsequently accepted and held the deed. He authorized a lady who was negotiating for the purchase of the lot from him to use the stable on the premises, thereby practically entering into possession of the property, and he expressly claimed title thereto in the two letters which have been referred to. All the requirements of the law as to delivery and acceptance are thus gratified.

, The appellant contends that the plaintiff's first prayer, which was granted, was defective in submitting to the jury a question of law, viz, whether the alleged deed of assignment of the leasehold estate was "a good and sufficient conveyance thereof." If any question had been raised in this case as to the legal effect of the deed in respect to its execution, acknowledgment, or the description of the property it purported to convey, this would have been a fatal defect. But the plain purpose of that clause in the prayer was to permit the jury to find their verdict for the defendant, notwithstanding they found in favor of plaintiff upon all the other facts recited in the prayer, if they found that she had in good faith, by the very deed of assignment offered in evidence divested herself of all interest in the land. That this was the purpose, we think sufficiently appears in the language of the plaintiff's second prayer, which instructs the jury there was no evidence legally sufficient to show that the defendant had divested herself of all estate and interest in, and control over, the lot of land. We do not think in view of this language, that the jury could have been misled by the language objected to in the first prayer and if there was no other erroneous ruling in the case, we should hesitate to hold that reversible error. Those words might well be regarded, in the light of the second prayer, as meaning, and understood by the jury to mean, "by a *bona fide* conveyance," and so understood, they could not have injured the defendant. Upon a new trial, however, the possibility of being misunderstood should be avoided by more careful language.

There was error in granting the second prayer which withdrew the case from the jury. There was evidence that Mrs. Hartman intended to sell and convey her estate and interest in this land and that when she executed the deed of assignment she did so in good faith, for that purpose, and that she believed James Moore was the true name of the purchaser. There was evidence that Grafflin negotiated for the purchase of this property for himself; that he directed the deed to be made in the name either of James Moore or Louis Moore;

that he paid the agreed price of $100 by his own promissory note; that he accepted the recording ticket for the deed, and subsequently accepted the deed itself, and claimed title to the property. This evidence certainly tended to sustain the defendant's contention that she had in good faith divested herself of all estate and interest in the land, if we have correctly stated the law in this case as to the adoption by Grafflin of the name of James Moore, and as to the legal presumption of delivery arising upon the facts of the case; and if this evidence was believed by the jury it would have supported a verdict in the defendant's favor.

The defendant's first and second prayers we think correctly state the law of the case. The first prayer is drawn to meet the theory that Grafflin gave the name of James Moore as that to be inserted in the deed. The defendant's husband was her agent to sell this property and have the deed prepared. He knew that Grafflin was the real purchaser, and it must be presumed that she intended to convey to the real purchaser by whatever name he gave.

The second prayer is drawn to meet the theory Grafflin attempted to set up, that he gave the name of Louis Moore. This is entirely immaterial however, to the defendant's contention, since if Grafflin accepted the conveyance drawn in the name of James Moore, he is bound by such acceptance, though he had directed it to be made to Louis Moore. The only affect the giving of the name of Louis Moore instead of James Moore, can have, is to strengthen the proof that he was the actual purchaser, and as such preferred to use his own first name, discarding the surname *only* to avoid his creditors.

For the errors indicated, the judgment must be reversed.

*Judgment reversed with costs to the appellant above and below, and new trial awarded.*