TOM PAPPAS, ALSO KNOWN AS OTHANASIOS
PAPPANAGIOTOU, v. ELIZABETH PAPPAS,
INDIVIDUALLY AND AS ADMINISTRATRIX OF
ESTATE OF NICHOLAS PAPPANAGIOTOU,
ALSO KNOWN AS NICK PAPPAS.

177 N. W. (2d) 401.

May 1, 1970—No. 41847.

*F. Gordon Wright, Oliver Wanglie,* and *Manly A. Zimmerman,* for appellant.

*Harry H. Peterson,* for respondent.

Heard before Nelson, Murphy, Otis, Sheran, and Theodore B. Knudson, JJ.

OTIS, JUSTICE.

This is an action brought by a surviving joint tenant to exclude any interest claimed by the widow of the other joint tenant in property located in Hennepin County. The trial court granted the relief sought. The widow appeals. We affirm the court's finding that the surviving joint tenant is entitled to the fee, but reverse its finding that a 100-year lease has merged with the reversion.

The real estate in question consists of three stores at 10, 12, and 12 1/2 East Lake Street in the city of Minneapolis. One store was occupied as a tailor shop by decedent, Nick Pappas, and the other two were leased as a pool hall and a barbershop. Nick married defendant, Elizabeth Pappas, in 1928. Six years later they visited Greece, Nick's birthplace, and on their return brought Nick's brother Tom to America. Tom worked for Nick until July 1946, when he opened his own tailor shop.

Until May 1956, Nick was a subtenant of one Max Blooston, who died in 1951, and his widow, Clara. In March 1917, Blooston acquired a lease for 100 years covering all of the premises here involved. In 1956, Nick obtained from Mrs. Blooston a contract to assign that lease for the sum of $30,500, paying her $9,000 at the time of the contract and the balance at the rate of $200 a month. In February 1958, Nick entered an earnest money contract, drafted by one Peter Kamuchey, with the First Congregational Church of Montevideo, the fee owner. By its terms Nick was to acquire title for the sum of $30,000. The purchase price was paid out of the sale of bonds held jointly by Nick and his brother Tom. Each had contributed to the acquisition of the bonds. On March 11, 1958, about 10 days before the closing date, Kamuchey wrote the escrow agent for the First Congregational Church as follows:

"A few minutes ago I talked with Mr. Nicholas Pappas and he told me that he and his brother, Tom Pappas are ready to pay the balance of $27,000.00, as soon as you people are ready to deliver the warranty deed to them. The deed, as you no doubt recall,

should be in the names of Nicholas Pappas and Tom Pappas as joint tenants and not as tenants in common."

The earnest money contract had made no mention of Tom Pappas as a grantee. When the closing was completed, Nick received the deed from Kamuchey, examined it, and placed it in a safe-deposit box. In December of that year, accompanied by his brother Tom, he took the deed to the courthouse and recorded it with the register of deeds. Thereafter the deed was retained in Nick's safe-deposit box until his death on July 13, 1965. On that date, $1,100 remained unpaid on the contract with Mrs. Blooston to secure the assignment of the 100-year lease.

The trial court found that Nick's attorney, Peter Kamuchey, was acting for both Nick and his brother Tom in purchasing the property from the church; that the inclusion of Tom's name as a joint tenant in the deed was not occasioned by mistake; that Nick had no seisin or possession of the property while married to Elizabeth and she was therefore not entitled to dower; and that the 100-year lease was merged in the joint tenancy. Judgment was entered for the plaintiff.

On appeal, Nick's widow Elizabeth asserts the following grounds for reversal: Tom did not assent to the conveyance conferring on him a joint tenancy, and his inclusion in the deed was occasioned by mutual mistake. The receipt in evidence of Peter Kamuchey's letter to the church was a violation of the parol evidence rule and the statute of frauds. The conveyance to Tom was a fraud on Nick's widow and threatens to impoverish her. By the terms of the 100-year lease, an assignment to Tom was ineffectual, and, in any event, as to him there was no merger of the lease and the fee.

We have considered all of these contentions and find them without merit except as to the issue of merger.

■ It is clear that a widow is entitled to no statutory dower under Minn. St. 525.16(2) in property held in joint tenancy by her husband. Mayburry v. Brien, 40 U. S. (15 Pet.) 21, 10 L. ed. 646; Jezo v. Jezo, 23 Wis. (2d) 399, 127 N. W. (2d) 246, 129

N. W. (2d) 195; Schmidt v. Jennings, 359 Mich. 376, 102 N. W. (2d) 589.

The letter from Kamuchey was competent evidence on the issue of whether or not Tom's inclusion as a grantee was due to inadvertence or mistake. Whether introduction of Kamuchey's letter violated the parol evidence rule or the statute of frauds was rendered moot both by Tom's acceptance of the deed which, under the circumstances, raises the presumption that he was familiar with its contents, Blinn v. Chessman, 49 Minn. 140, 51 N. W. 666, and by the knowledge and acquiescence of Nick who was aware of the joint tenancy and clearly expressed his tacit approval.

■ As to the issue of merger, we find merit in the contention that the assignment of the 100-year lease had not been consummated when Nick died. It was not valid until executed with the formality prescribed by the lease itself. Moreover, a merger cannot occur where the assignment of the lease is to one joint tenant but not to the other.

The contract between Nick Pappas and Mrs. Blooston, entered in 1956, remained executory at the time of Nick's death. Actually, Tom Pappas paid nothing on the contract and the balance due Mrs. Blooston was provided either by Nick's widow or by his estate. Consequently, when Nick died, neither he nor Tom was vested with the 100-year lease which plaintiff claims gave rise to the merger. Ingle v. Jenkins, 2 Ch. D. 368. In addition, there is validity in defendant's position that the 100-year lease could not be assigned without the formalities specified in paragraph 30 of that lease, which provides as follows:

"* * * [T]he Lessee shall have the right to assign and transfer this lease and the leasehold estate hereby created, to any person or persons, or body corporate, but only by a written instrument under seal duly executed and acknowledged by the Lessee, and also by the assignee therein named and duly recorded in the office of the Register of Deeds of Hennepin County, Minnesota, and containing a covenant or covenants on the part of the as-

signee to the effect that such assignee accepts and assumes all the terms, covenants and conditions of this lease, and will comply with and be bound by the same."

Although the fact of merger is, under our decisions, largely a matter of intent, State ex rel. Inter-State Iron Co. v. Wallace, 196 Minn. 212, 264 N. W. 775, no authority has been cited for holding that a lease acquired by only one of two joint tenants merges with a fee held by both. The law is otherwise:

"* * * Thus, if there be tenant for years, and the reversion in fee-simple descends to or is purchased by him, the term of years is merged in the inheritance, and shall never exist any more. But they must come to one and the same person in one and the same right; else, if the freehold be in his own right, and he has a term in right of another (*en auter droit*), there is no merger." 1 Cooley's Blackstone (4 ed.) Book II, p. 177.

To the same effect is 1A Thompson, Real Property, § 203, p. 170, and 3 Tiffany, Real Property (3 ed.) § 901. All of the authorities agree that to constitute a merger the two estates must be in the same person at the same time and in the same right.[1]

Consequently, we hold that the lease and the fee did not merge in either Nick or Tom. To the extent the trial court held otherwise the judgment is reversed and remanded with directions to enter an appropriate decree granting the estate of Nick Pappas a separate and exclusive interest in the 100-year lease.

Reversed and remanded.

---

[1] See, 28 Am. Jur. (2d) Estates, §§ 374, 380; Annotation, 143 A. L. R. 93.