ROBERT M. PRATT *vs.* STREET COMMISSIONERS OF THE CITY OF BOSTON.

Suffolk.     March 5. — June 25, 1885.     W. ALLEN, COLBURN, & HOLMES, JJ., absent.

If the language of a section of the Public Statutes is ambiguous, or susceptible of two constructions, the court, in determining its meaning, will consider the language of the statutes of which it is a revision.

Under the Pub. Sts. *c.* 11, § 4, and *c.* 13, §§ 43, 46, 57, the shares of stock of a corporation organized under the laws of this Commonwealth to build a railroad in a foreign country are taxable to the owner for state, county, or town purposes.

PETITION for a writ of certiorari, to quash the proceedings of the respondents in refusing to abate a tax assessed upon the petitioner by the assessors of Boston as of May 1, 1884. The case was reserved for the consideration of the full court, by *Field,* J., upon the petition, answer, and an agreed statement of facts, and was as follows:

The petitioner filed a list of his estate with the board of assessors, in accordance with the Pub. Sts. *c.* 11. In answer to inquiries by the assessors, he stated that he owned on May 1, 1884,

thirty-five hundred shares of the capital stock of the Mexican Central Railway, limited,—a corporation duly organized on February 25, 1880, under the St. of 1879, c. 274, for the purpose of building railroads in a foreign country, and now existing under the Pub. Sts. c. 112, §§ 225–229. The assessors refused to accept the list unless these shares were added thereto. The shares were thereupon added to the list, the petitioner reserving his right to contest the assessors' right to assess a tax upon them. The assessors assessed a tax of $714 on these shares, based upon an estimate of their value on May 1, 1884. A petition was thereupon filed with the respondents, and they refused to abate the tax, and dismissed the petition.

The corporation paid to the treasurer of the Commonwealth, for the year in which the tax was assessed to the petitioner, a tax of one tenth of one per cent on the whole amount of its capital stock, under the Pub. Sts. c. 13, §§ 43, 46. .

*F. Morison*, for the petitioner. The only question in this case is whether a stockholder in a corporation organized under the St. of 1879, c. 274, (Pub. Sts. c. 112, § 225,) is liable to taxation on the value of his shares by the city or town in which he resides. If he is so taxable, it must be under the general words in the Pub. Sts. c. 11, § 4, where among other property subject to taxation are included " stocks in . . . . moneyed corporations, within or without the State." The section, however, concludes with the following proviso: " Provided, that no taxes shall be assessed in any city or town for state, county, or town purposes upon the shares in the capital stock of a corporation organized or chartered in the Commonwealth paying a tax on its corporate franchises, under the provisions of chapter thirteen for any year in which it pays such tax."

It is agreed that, for the year in which this tax is assessed, the corporation, whose shares of stock have been assessed, paid a tax on the whole amount of its capital stock, under the Pub. Sts. c. 13, §§ 43, 46.

The Pub. Sts. c. 112, § 229, make the corporation subject to c. 13, § 46. The last-named section provides that such a corporation " shall, for purposes of taxation, be subject to the provisions of section forty-three; but no other provisions of this

chapter relating to the assessment of taxes upon corporations or the shareholders therein shall apply thereto."

Section 43 imposes upon the corporation a semiannual tax of one twentieth of one per cent upon the "capital stock at the par thereof."

A tax of this nature is clearly a tax upon the corporate franchise. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. *Oliver* v. *Washington Mills*, 11 Allen, 268, 274. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, 152.

The provisions of the Public Statutes exempting shareholders in such corporations being so clear and unambiguous, it is unnecessary to consider whether, under the statutes as they previously existed, a shareholder in such a corporation was liable to taxation. If it be assumed that he was thus liable, those statutes have been expressly repealed, and whether it was or was not intended in the Public Statutes to change the law, the law has been changed. *Baker* v. *Atlas Bank*, 9 Met. 182, 197. *Holbrook* v. *Bliss*, 9 Allen, 69, 76.

*T. M. Babson*, for the respondents.

DEVENS, J. Previously to the enactment of the Public Statutes, three modes of taxing corporate franchises and privileges, and shares of capital stock, existed. Most of the corporations chartered by the State, or formed under its general laws, paid annually a tax upon their corporate franchises at a valuation equal to the aggregate value of the shares in the capital stock at the market price as ascertained by the tax commissioner, and the individual holder of shares was not taxable after the corporations had paid this tax upon their franchises. St. 1865, c. 283, §§ 3–5.

A second class, which originally included corporations chartered by the Commonwealth or organized under its general laws for mining, or owning, purchasing, or selling mines or lands without the State, and also all such companies incorporated elsewhere as had an office or place of business within the Commonwealth for the direction of their affairs or the transfer of their shares, paid annually a tax of one tenth of one per cent upon their capital stock at the par value thereof. This was not a tax upon property, but was a fixed and arbitrary excise upon

the corporate functions and privileges with which they were invested by the Commonwealth, or which, being created or authorized by another State, they were permitted to exercise here, this tax upon foreign companies being founded upon the consideration of their "having an office or place of business within the Commonwealth." St. 1865, *c.* 283, § 8. All these corporations were required by subsequent provisions to make a report of their property, receipts, and expenditures, products of their business, &c.; from which report or otherwise the tax commissioner was to ascertain the net profits or gains of each, and assess a tax of four per cent upon the amount thereof to the corporation. St. 1865, *c.* 283, §§ 9–11.

The St. of 1879, *c.* 274, provided for the formation of corporations to construct and operate railroads and telegraphs in foreign countries. The other provisions of this statute need not be considered. Section 6 provides that, for purposes of taxation, such corporations shall be subject to the provisions of section eight of chapter two hundred and eighty-three of the acts of the year 1865; but no other provisions of said act relating to the assessment of taxes upon corporations or the shareholders therein shall apply thereto. They were thus made subject to the franchise tax of one tenth of one per cent annually on their stock at its par value, which was a strictly arbitrary imposition in the nature of an excise. Although by the same section they were required to render annually to the tax commissioner a complete list of their shareholders, with their places of residence, the number of shares held by each, the amount of the capital stock, and the par and market value of the shares, they were not made subject to the tax upon profits imposed upon the corporations described in the St. of 1865, *c.* 283, § 8; nor were the provisions for ascertaining them, found in that chapter, made applicable to this class of corporations.

Under the law as it thus stood, it was never questioned, and we do not now understand it to be controverted, that the shares in corporations formed to build and operate railroads in foreign countries were taxable in cities or towns for State, county, city, or town purposes to the owners thereof; and that the tax on the corporation itself was strictly on its franchise, and not upon either its property or its profits.

The position of the petitioner is, that, whatever may have been the law at any previous time, since the enactment of the Public Statutes, which repealed the Sts. of 1879, *c.* 274, and 1865, *c.* 283, no tax can now be levied by the city of Boston, or other place where the owner thereof may reside, on his shares in the stock of a corporation such as the Mexican Central Railway.

The Public Statutes were intended to be only a consolidation and arrangement of the statutes as they were then in force, and it was the effort of the commissioners to condense into as concise a form as was consistent with clear impression the will of the Legislature as embodied in them, and so to express them that no existing rights should be changed. Some amendments were made by the commissioners at the suggestion of the special committee of the Legislature, by the special committee, and by the Legislature itself. It will be observed also, that, in consolidating and arranging statutes, a construction thereof must necessarily sometimes be made. Even if this might not agree with what judicially they would have received, when put into the form of an enactment, it must be accepted as controlling. Where, therefore, the language of the Public Statutes is distinct, clear, and admits of but one possible interpretation, it must be followed, although it assumes the law to have been as we should not have held it, and although we are not able to ascertain from the reports of the Legislature, its committees, or otherwise, that there was any intention to amend or change it. *Bent* v. *Hubbardston*, 138 Mass. 99. Where the law as expressed in the Public Statutes is ambiguous or doubtful, or susceptible of two constructions, it is then most proper to examine the statutes as they previously existed, in order that it may be construed in the light afforded by them. In determining also what is the meaning properly attributable to any language, we are also to consider the other language used in relation to the same subject, and whether, if that found in the Public Statutes apparently varies from that used in the earlier statutes, the reënactment of those provisions therein associated with it does not indicate the absence of any intention to make a change of meaning.

The petitioner's contention is that the city is expressly prohibited from assessing any tax upon his shares in the Mexican

Central Railway by the following proviso of the Pub. Sts. c. 11, § 4, which section states the proper subjects of taxation on personal property : " Provided, that no taxes shall be assessed in any city or town for state, county, or town purposes upon the shares in the capital stock of a corporation organized or chartered in the Commonwealth paying a tax on its corporate franchises, under the provisions of chapter thirteen for any year in which it pays such tax."

If this proviso stood alone, and was to be construed without careful examination of the provisions of c. 13, to which it refers, it would seem to justify the petitioner's contention, although its effect would be to change the law as it previously existed, and, without apparent reason, make corporations for building foreign railways the only class which do not in some form pay taxes on the market value of their stock, or the profits made thereby.

Section 57 of the Pub. Sts. c. 13, is especially to be considered in connection with this proviso. It is apparently intended to deal with and define all those corporations whose shares are not to be assessed in the cities or towns. " No taxes shall be assessed in any city or town for state, county, or town purposes, upon the shares in the capital stock of corporations, companies, copartnerships, or associations, taxable under sections forty, forty-two, forty-five, forty-seven, fifty, and fifty-two, for any year for which they pay to the treasurer the tax on their corporate franchises or property under said sections."

All corporations for business and profit, except banks, whose shares are otherwise taxed under c. 13, and except corporations organized to build railroads in foreign countries, are here included ; and the inference is inevitable, that, under this section, the shares of such companies are left for taxation in the ordinary mode. Sections 40, 42, and 47 relate to companies whose stock is divided into shares, and who pay a corporate franchise tax on a valuation equal to the aggregate market value of their shares. Sections 50 and 52 relate to companies having a guaranty capital or permanent fund which are made subject to the provisions of chapter 13, imposing a tax upon the franchises of corporations organized for purposes of business or profit, having a capital stock divided into shares, and also to trust companies,

&c., which are made subject to the provisions of the chapter, so far as the same are applicable.

Section 45 refers to those companies which pay the excise tax of one tenth of one per cent, and which also pay, upon the net profits or gains of the corporation from its property or business during the year, an assessed tax of four per cent.

The reason why the stock of these corporations is exempted from further taxation for state purposes is obvious, and an examination of *c.* 13 discloses that much of what they pay, nominally upon their corporate franchises, but really upon the market value or profits of their stock, is divided between the towns of the residence of their shareholders.

The reason why the shares in the capital stock of companies paying under §§ 43, 46, are not exempted, is equally clear. All the corporations paying, under § 43, the excise tax of one tenth of one per cent, pay also on the profits of their business under § 45, except those described in § 46. The whole class described in § 43 is therefore exempted, by the terms of § 57, from further taxation on their stock, with the exception of the companies formed to build railroads, &c. in foreign countries, which is the class described in § 46. It appears quite clear that the construction of § 57 requires that the shares of such companies should continue to be taxed as they had theretofore been.

Section 46 subjects each corporation formed in this State for the purpose of constructing railroads in foreign countries to the provisions of § 43 for the purposes of taxation, "but no other provisions of this chapter relating to the assessment of taxes upon corporations or the shareholders therein shall apply thereto." They are not therefore subject to the taxes on their gains and profits which the succeeding sections impose on the other corporations named in § 43, but only to the excise tax of one tenth of one per cent. But the concluding clause of § 46 requires them to make a return of their shareholders, their places of residence, the par and market value of their stock, &c., all which returns would be meaningless, unless there is a tax to be assessed on the shares. It is to be observed, also, that the Railroad Act, Pub. Sts. *c.* 112, which provides for the formation of companies of this class, and their administration, subjects them, in § 229, to the provisions of *c.* 13, § 46.

Section 57 appears to have been intended to deal with the whole subject of the exemption of shares of these business corporations from taxation; it followed, in so doing, previously existing laws. The proviso at the end of *c.* 11, § 4, may perhaps have been superfluous; but its purpose was to show that, while the general description of taxable property which precedes it included shares of stock, it was not intended that those which were exempted by other provisions of the statute should seem, by any language therein used, to be subjected to taxation. Its object was not to enlarge exemptions beyond those of previously existing laws, or those provided for in such portions of the statute as dealt with the subject. In spite of the generality of the language, the corporations that are meant by the proviso in *c.* 11, § 4, are to be sought in *c.* 13, § 57. These sections are not otherwise capable of being reconciled; and, as this construction brings the statute in harmony with previously existing laws, we are the more ready to adopt it. The words in the proviso, "paying a tax on its corporate franchise, under the provisions of chapter thirteen," are thus, in our view, limited by the provisions of § 57 of that chapter, which state explicitly the shares which are not to be taxed for state, county, or town purposes.

*Petition dismissed.*