ELLEN M. CREEDEN, administratrix, vs. BOSTON AND MAINE
RAILROAD.

Essex.    November 9, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Constable. Officer. Arrest. Railroad. Carrier. Watch and Ward. Words,*
*"Criminals," "Abroad."*

Enumeration by *Rugg*, J., of statutes under which a constable authorized to serve
criminal process may make an arrest without a warrant.

If a constable, who is an officer of the watch authorized to serve criminal process
and has been informed and believes that criminals are escaping in a train of a
railroad company which is stopping at a station, enters the train, not to serve a
warrant but "for the purpose of apprehending said criminals," he has no rights
against the railroad company greater than those of a mere licensee, and the com-
pany is under no obligation to furnish a safe place for him to alight from the
train, there being many persons properly described as criminals whom he would
have no right to arrest without a warrant.

A constable, who is an officer of the watch authorized to serve criminal process,
entering a passenger train of a railroad company in the night-time for the al-
leged purpose "of examining certain persons abroad" whom he has reason to
suspect of an unlawful design, has no rights against the railroad company greater
than those of a mere licensee, and the company is under no obligation to furnish
a safe place for him to alight from the train, passengers in a railroad train not
being "persons abroad" within the meaning of R. L. c. 31, § 2.

A passenger on a train of a railroad company who has placed himself in the hands
of the carrier for transportation is not "abroad" within the meaning of R. L.
c. 31, § 2, authorizing watchmen appointed under that chapter during the night-
time to "examine all persons abroad whom they have reason to suspect of an
unlawful design" and to arrest persons so suspected who do not give a satis-
factory account of themselves.

TORT by the administratrix of the estate of Patrick Creeden
of Newburyport for the benefit of his widow and children under
R. L. c. 111, § 267, to recover damages for causing his death.
Writ dated March 6, 1906.

The declaration alleged that the defendant on December 26,
1905, operated a steam railroad through Newburyport and for a
long time previous to the injuries complained of had maintained
a station in Newburyport at which its trains stopped, for the
purpose of taking on and letting off persons rightfully upon its
trains; that contiguous to and adjoining the station was a bridge
spanning Merrimac Street in that city, which was constructed

without railings, barriers, lights, warnings or safeguards; that between the outer rail of the track and the girder of the bridge there was a piece of timber running lengthwise with the bridge and extending about two inches above its surface; that beyond this timber planks were laid at an angle with the surface of the bridge, sloping upward and outward to the girder, so that they formed an inclined plane running the whole length of the bridge, joining the girder in such a way as to cause a person walking beyond the outer rail to pitch forward toward and over the girder, and that this condition could not be observed owing to the darkness at the time of the accident to the plaintiff's intestate, who, when walking along the bridge, was thrown to the street below and was killed; and that the defendant negligently failed to furnish suitable lights and safeguards upon the bridge and negligently caused its cars to be stopped on the bridge.

The further material allegations in the declaration were that the "plaintiff's intestate was a duly appointed and qualified officer of the watch and constable for criminal service in said Newburyport, doing his duty as such, and wearing his uniform; that on or about said date and in the night-time, the defendant, by its servants and agents, stopped one of its trains at or near its station in said Newburyport for the purpose of allowing persons rightfully to board its said train and alight therefrom, in such a manner and place as to cause the rear of said train to stand upon or beyond the aforesaid bridge of the defendant over said Merrimac Street; that the plaintiff's intestate, acting as an officer and constable aforesaid, and in the performance of the duty delegated to him under the instructions of a superior officer, and upon information received by him, and upon his belief that criminals were escaping on said train from said Newburyport, and for the purpose of apprehending said criminals in the performance of his duty as said officer and constable, and for the purpose of examining certain persons abroad whom he had reason to suspect of an unlawful design, boarded said train and walked through one or more cars thereon toward the rear of said train and to or beyond the bridge aforesaid; that he found one of said suspected persons in said car; that, accompanied by said suspected person, the plaintiff's intestate then alighted and walked away from said train, toward said station upon said bridge; . . . that he was

rightfully upon said train under an implied invitation from the defendant; that said defendant had accepted as passengers on its said train during the night-time a person or persons whom the plaintiff's intestate had reason to suspect of some unlawful design."

The defendant demurred to the declaration. The Superior Court sustained the demurrer and gave judgment for the defendant; and the plaintiff appealed.

*J. T. Connolly & R. E. Burke*, for the plaintiff.

*H. F. Hurlburt & D. E. Hall*, for the defendant.

RUGG, J. It is to be noted that there is no allegation that the plaintiff's intestate entered the train for the purpose of serving a warrant for the arrest of any person whom he believed to be there, nor that he had any reasonable ground to believe that there was being committed upon the train any breach of the peace or other crime, which required him to enter for the purpose of preserving public order, nor that there were upon the train persons who had committed a felony or any of the misdemeanors for which under the statutes it is lawful for a constable to arrest without a warrant. See R. L. c. 11, § 223; c. 46, §§ 7, 13; c. 52, § 8; c. 57, § 93; c. 66, § 5; c. 75, § 128; c. 91, §§ 4, 123, 134; c. 100, § 86; c. 108, §§ 10, 17, 23; c. 111, § 260; c. 166, § 2; c. 204, § 20; c. 208, §§ 109, 121; c. 212, §§ 36, 46, 47, 53, 58, 60, 62, 74, 80; St. 1906, c. 403, amending R. L. c. 212, § 53; c. 214, §§ 2, 6.

The vital allegations are that, being informed and believing "that criminals were escaping on said train from said Newburyport," he went aboard for the purpose of "apprehending said criminals" and "examining certain persons abroad whom he had reason to suspect of an unlawful design." "Criminals" is a word of broad significance, and includes those who may have committed the most trifling infractions of a penal statute, as well as those guilty of the most heinous offences. It obviously describes a large number of persons, whom a constable would have no right to arrest without a warrant. The other statement of purpose, for which the entry upon the train was made, was to perform the duty required under R. L. c. 31, § 2, relating to watch and ward. The justification, which this statute might afford, reaches only to the watch in the examination of "all persons abroad

whom they have reason to suspect of an unlawful design." It has been strongly argued, in behalf of the defendant, that, in view of the history of this statute, it should be construed to apply only to those persons who are walking abroad. See statute passed October 19, 1652; 3 Mass. Col. Rec. 282; Prov. St. 1699–1700, c. 10; 1 Prov. Laws (State ed.) 381; St. 1796, c. 82; Rev. Sts. c. 17, § 4; Prov. St. 1712–13, c. 4; 1 Prov. Laws (State ed.) 699; Commissioners' Report, c. 23, § 4; *Pratt* v. *Street Commissioners*, 139 Mass. 559, 563.

Without passing upon this question, it is enough for the purposes of the present case to determine that one, who has become a passenger upon a steam railroad train and has placed himself in the carriage of the common carrier, cannot be said to be "abroad." Therefore, the constable was at most a mere licensee. The allegations of the declaration place him upon a quite different basis than was the plaintiff in *Parker* v. *Barnard*, 135 Mass. 116, where the police officer, in the execution of his duty, was injured by reason of a violation of statute on the part of the owner of the building. This case is also distinguishable from *Learoyd* v. *Godfrey*, 138 Mass. 315, where the police officer had been expressly invited upon the premises, and, in addition to the invitation, went for the purpose of suppressing a breach of the peace. The particular circumstances in *Gordon* v. *Cummings*, 152 Mass. 513, and *Finnegan* v. *Fall River Gas Works*, 159 Mass. 311, were such as to warrant the finding of an implied invitation on the part of the owner to enter the premises where the injuries were received. It is not alleged here that the defendant had failed to perform any statutory obligation incumbent upon it, which is a further fact distinguishing it from *Parker* v. *Barnard*, 135 Mass. 116. There was not even the implied invitation on the part of the defendant for the constable to enter the train, which might possibly be held to exist if a theft or other crime was being committed upon the train. Nor are the plaintiff's rights any stronger, if indeed they are as strong, as those of a fireman entering upon property for the purpose of protecting it from destruction. Yet it has been held in other jurisdictions that under such circumstances the person entering has only the rights of a licensee. See *Gibson* v. *Leonard*, 143 Ill. 182; *Beehler* v. *Daniels*, 18 R. I. 563; *Kohn* v. *Lovett*, 44 Ga. 251;

*Woods* v. *Miller*, 30 App. Div. (N. Y.) 232; *Woodruff* v. *Bowen*, 136 Ind. 431. The case made out by the declaration is somewhat like *Berry* v. *Boston Elevated Railway*, 188 Mass. 536, where the defendant was exonerated, the plaintiff having only the rights of a licensee. The defendant owed him no duty to keep its premises in a safe condition, and in such a case could not be held liable ordinarily, unless there was some recklessness or wanton misconduct on the part of itself or its servants. As was said by Mr. Justice Barker, in *Redigan* v. *Boston & Maine Railroad*, 155 Mass. 44, at page 47, "The general rule is, that a bare licensee has no cause of action on account of dangers existing in the place he is permitted to enter, but goes there at his own risk, and must take the premises as he finds them. . . . No duty is cast upon the owner to take care of the licensee, or to see that he does not go to a dangerous place, but he must take his permission with its concomitant conditions and perils, and cannot recover for injuries caused by obstructions or pitfalls." See *Cowan* v. *Kirby*, 180 Mass. 504; *Byrnes* v. *Boston & Maine Railroad*, 181 Mass. 322; *Griswold* v. *Boston & Maine Railroad*, 183 Mass. 434.

*Judgment affirmed.*