PERLEY P. PITKIN'S ADMRS. *v.* CITY OF MONTPELIER.

January Term, 1912.

Present: ROWELL, C J., MUNSON, HASELTON, AND POWERS, JJ.

Opinion filed February 19, 1912.

*Municipal   Corporations—Contracts—Liability—Deeds—Delivery*
*Acceptance—Presumption—Delivery to Agent—Review—Pre-*
*sumption in Support of Judgment.*

The city of Montpelier regularly voted to locate a new school house on land owned by a decedent's estate, and later the city council voted to pay a designated sum of money for the land, and then the administrators of the decedent's estate, after procuring from the probate court a license to sell, prepared a duly executed deed of the land to the city, and delivered it to the mayor, for the city, with the intention of transferring the title to the described land unconditionally, and the mayor received the deed knowing of that intention, but with the intention on his part of submitting it to the secretary of the school board, which he did. The deed was never presented to the city council, and the city council never voted that a warrant be drawn to pay for the land, and the

deed was never filed for record. The city subsequently regularly voted to rescind its vote to locate the school house on the land in question, and soon thereafter the mayor returned the deed to the administrators, who refused to receive it. *Held,* that the city was not liable for the price as there had been no acceptance by it of the deed, and so, no delivery thereof.

Title to real estate passes on delivery of the deed thereof, but acceptance of the deed by the grantee is essential to a good delivery; and delivery does not depend on the acts and intention of the grantor alone but on the acts and intention of both the grantor and grantee.

In the case of a grant obviously beneficial to the grantee, the law ordinarily presumes acceptance by him, unless his dissent is shown.

A conveyance to a city, for valuable consideration, of land for school purposes is not so obviously beneficial to it that its acceptance of the deed will be presumed.

In order that delivery of a deed to an agent shall be equivalent to delivery to the grantee, the agent must be authorized to accept it.

All the powers and duties of a mayor of a city depend on the provisions of its charter, and valid by-laws made in pursuance thereof.

Under the charter of the city of Montpelier, a deed to the city can be accepted only by the city council, but to constitute an acceptance there need not be a formal vote of acceptance, nor is it necessary that the deed itself be actually presented to the city council.

The acceptance of a deed by a city, as well as by any other grantee, may be inferred from circumstances.

In order to maintain assumpsit for the purchase price of real estate, there must have been an actual acceptance of the conveyance by the grantee, and his refusal of a duly tendered sufficient conveyance will not suffice.

Whether there has been a complete delivery of a deed is ordinarily a question of fact, or a question of mixed fact and law.

In support of a judgment, this Court will assume that the trial court made an inference that is required by the facts found.

ASSUMPSIT for the price of land sold and conveyed. Plea, the general issue. Trial by court at the March Term, 1911, Washington County, *Miles,* J., presiding. Judgment for defendant to recover its costs. The record does not show that the question of the Statute of Frauds was raised below, nor that the plaintiff objected to the admission of any evidence, except to the admission of a cash book and the records of warnings, and proceedings of certain meetings.

*W. N. Theriault* and *W. B. C. Stickney* for the plaintiffs.

The deed was properly executed and delivered and title passed, as acceptance is presumed. *U. S.* v. *Dandrigde*, 12 Wheaton 64; *Lessee of Mitchell* v. *Ryan*, 3 Ohio St. 377; *Halluck* v. *Bush*, 2 Root 26, 1 Am. Dec. 60; *Hedge* v. *Drew*, 12 Pick. 141; *Peavey* v. *Tilton*, 18 N. H. 151; *Brown* v. *Austin*, 35 Barb. 341; *Moore* v. *Giles*, 49 Conn. 570; *Elsberry* v. *Boykin*, 65 Ala. 336; *Rivard* v. *Walker*, 39 Ill. 413; *Garnons* v. *Knight*, 5 Barn. & C. 671; *Elmore* v. *Marks*, 39 Vt. 538; *Moore* v. *Giles*, 49 Conn. 570; *Edlich* v. *Minder*, 72 N. Y. 885; *Munoz* v. *Wilson*, 111 N. Y. 295; *Rosseau* v. *Bleau*, 131 N. Y. 177; *Lindsay* v. *Lindsay*, 11 Vt. 621; *Pratt* v. *Holman*, 16 Vt. 530; *Dwinell* v. *Bliss*, 58 Vt. 353; *Harrington and Kittredge* v. *Gage*, 6 Vt. 534. Formal acceptance is not required. The city was bound to accept a sufficient deed. *Beckrich* v. *North Tonawanda*, 171 N. Y. 292; 1 Sugden on Vendors (14th Ed.) 545, note; *Richards* v. *Edick*, 17 Barb. 265; *Franchot* v. *Leach*, 5 Cow. 506; *Shannon* v. *Comstock*, 21 Wend. 457; *Tripp* v. *Bishop*, 56 Pa. St. 424; *Jacobs* v. *Peterborough etc. Co.*, 8 Cush. 223; *Sears* v. *City of Boston*, 16 Pick. 357; *Gill* v. *Bicknell*, 2 Cush. 358; *Oatman* v. *Walker*, 33 Me. 67; *Pomeroy* v. *Winship*, 12 Mass. 513; *Preble* v. *Baldwin*, 6 Cush. 549; *Hodges* v. *Green*, 28 Vt. 358; *Argus Co.* v. *Albany*, 55 N. Y. 495; *Lamkin* v. *Baldwin & Lamkin Mfg. Co.*, 44 L. R. A. 786; *Gill* v. *Bicknell*, 2 Cush. 355; *Leonard* v. *Davis*, 1 Black. 476.

*B. E. Bailey* and *H. C. Shurtleff* for the defendant.

HASELTON, J. This is an action of assumpsit brought by the administrators of the estate of the late Perley P. Pitkin to recover of the City of Montpelier the purchase price of certain land on the ground that the land had been sold and conveyed by them to the city. The case was tried by the court which made a written finding of facts. Upon the facts found the court rendered judgment for the defendant to recover its costs. The plaintiffs bring the case here by a bill of exceptions.

By No. 245 of the Acts of 1908, the City of Montpelier was authorized to issue "notes or bonds not exceeding one hundred thousand dollars in amount, for the purpose of building school houses, and for the purchase of land for sites therefor and for

grounds and playgrounds in connection therewith, and for the payment of damages for land taken for that purpose."

March 2, 1909, at its annual meeting, the city by a majority vote authorized the issue of bonds to an amount not exceeding a hundred thousand dollars for the purposes named in the act of authorization, and at that meeting a committee was chosen consisting of the Mayor, as chairman, and six of the school commissioners, to make investigations and to report to a special city meeting to be held on the first Tuesday in May following. A city meeting, duly warned, was held on that day and was duly adjourned to May 18, 1909. At the adjourned meeting the school building committee, as it was called, made a report of their investigations and deliberations. The material part of their report was a recommendation, as the site for a high school building, of the Bixby lot on Loomis street and such portion of the Pitkin and Lane Manufacturing Company's properties adjoining as might be found necessary for the site. This site the committee reported has a frontage on the Bixby lot of 195 feet, and on the Pitkin lot of 178 feet, has a depth of 215 feet, and affords ample space for the building. The committee reported upon the advantages of this site saying, among other things, that it has close at hand sufficient available land for adequate playgrounds should the city desire to procure them, and expressing the belief that ample playgrounds for scholars should be furnished by the city. They expressed their opinion that the site recommended, with ample playgrounds, ought to be secured and the school building erected at a cost not to exceed a hundred thousand dollars; but that, owing to the uncertainty of condemnation proceedings and in view of the necessary grading, the total cost might exceed a hundred thousand dollars. The city meeting accepted and adopted the report and adopted the location of building and playgrounds recommended, and referred the erection of the school building to the school board and the Mayor, the latter to act as chairman, and referred to the city council the matter of any condemnation proceedings that might be found necessary.

October 13, 1909, the city council instructed the clerk to notify the plaintiffs, and also Clementine L. Bixby and the Lane Manufacturing Company, that the council proposed to take

lands belonging to them on the southeasterly side of Loomis street as a site for a school house and for lands for playgrounds in connection therewith, and that the council would meet October 26, 1909, at an hour and place named, to hear those notified upon the question of such taking and upon the question of damages. It does not appear that any meeting was held in accordance with this notice, but on October 27 the council voted, and here we quote from the record, " to pay for land for a new building and grounds as follows: Lane Manufacturing Company, $9,000.00; L. H. Bixby, $9,000., he to reserve the buildings; Pitkin Estate, $5,750."

Previous to the meeting at which this vote was taken the city council, or the members thereof, with the plaintiff Wood had gone over the land in question, and negotiations had been had between the council and the attorney for the plaintiffs as to price, and the vote to pay $5,750.00 to the Pitkin estate is found by the court to have been to pay that sum for the land described in the deed in question. The findings of fact state that the vote was taken after remarks addressed to the council by the attorney of the plaintiffs as to the price that would be satisfactory to them. It is not found, and we are not warranted in inferring, that the vote of the council was the acceptance of an offer made by the plaintiffs through their attorney or otherwise. It appears rather that the vote was an offer for the land made by the council, an offer which, very likely, in consequence of the remarks of the attorney, the council had reason to suppose that the plaintiffs would accept. At the time of this vote the plaintiff Wood was away from Montpelier and he did not return for a week or ten days thereafter. A while after his return the plaintiffs applied to the probate court for a license to sell the real estate in question, and that court granted such license December 3, 1909. Some six weeks later, or, to be exact, January 11, 1910, the plaintiffs executed the deed in question.

So far as appears the next that was done in the matter was January 21, 1910. On that day the plaintiff Wood delivered the deed to the Mayor of the city, for the city, with the intention on the part of the plaintiffs of transferring the title to the described land unconditionally, and the deed was received by the mayor with knowledge of such intention. The mayor received

the deed with the intention on his part of submitting it to the secretary of the school board to whom he shortly did deliver it. Soon thereafter the secretary submitted it for examination to Mr. Howland, a member of the school board, who never carefully examined it before it was returned to the plaintiff Wood. At the time the mayor received the deed, but after he had taken it into his hands, he said to the plaintiff Wood, in substance, that the city would not be able to pay for the land until its bonds were floated and the plaintiff Wood then understood that the land would be paid for when the bonds were issued.

In the interval following the vote of March 2, 1909, looking to the issue of school bonds the matter of bonding had been at different times under consideration. September 22, 1909, the city council had referred the matter of floating $30,000 of schoolhouse bonds to the treasurer for the ascertainment of the best method of so doing. October 27, 1909, at the meeting at which it was voted to pay the Pitkin estate the sum already named, the city council referred the matter of bonding to the finance committee which was to report thereon. December 8, the finance committee was authorized to advertise for bids on high school bonds of the face value of $30,000, the bids to be opened December 22, 1909. It seems that the authorization was acted upon, for December 22, 1909, bids were opened, the best bid being from the National Life Insurance Company, and an issue of bonds of the face value of $30,000, was awarded to that company. January 4, 1910, the matter of printing bonds was referred to the finance committee. January 12, that committee reported that the insurance company would have its attorney present a sample bond and look into the legality of the issue. These proceedings of December 8, December 22, January 4, and January 12, were taken in the interval between the time when the plaintiffs' got their license to sell the real estate and the time when they presented the deed in question to the mayor. The National Life Insurance Company revoked its bid and no bonds were, in fact, issued. Just when the bid of the insurance company was revoked does not appear.

March 1, 1910, at its regular annual meeting, the question of the issue of bonds of the amount of a hundred thousand dollars for the purposes contemplated by the vote of the March

previous was under consideration. May 19, 1910, at a special meeting the city voted 546 to 82, to rescind the vote of the year previous, the vote by which the Loomis street site had been chosen for a schoolhouse and playgrounds. Six days after this rescinding vote the mayor received the deed in question from a member of the school board, and the next day after receiving it the mayor returned it to the plaintiff Wood who refused to receive it. The subsequent history of the deed, not claimed by either party to be material, is in brief this: The mayor left it with the plaintiff Wood who sent it to the city clerk's office, where it has since been, but not as a file for record. We have recited the principal facts attending the proceedings relative to the deed or to the land described therein.

It is claimed by the plaintiffs that in consequence of what appears, the title to the land vested in the city, and that they are entitled to recover the purchase price on the ground that the land was sold and conveyed to the city.

Title to real estate passes upon the delivery of a deed thereof. *Harrington* v. *Gage,* 6 Vt. 532; *Elmore* v. *Marks,* 39 Vt. 528; *In re Lane's Estate,* 79 Vt. 323, 328, 65 Atl. 102; *Abbott* v. *Lapoint,* 82 Vt. 246, 73 Atl. 166.

But the acceptance of a deed by the grantee is an essential element of a good delivery. *Denton* v. *Perry,* 5 Vt. 382; *King* v. *Smith,* 33 Vt. 22; *Dwinell* v. *Bliss,* 58 Vt. 353, 357, 5 Atl. 317; *Orr* v. *Clark,* 62 Vt. 136, 19 Atl. 929; *Gorham's Admr.* v. *Meecham's Admr.,* 63 Vt. 231, 235, 22 Atl. 572, 13 L. R. A. 676; *Gould* v. *Day,* 94 U. S. 405, 24 L. ed. 232; *Creeden* v. *Mahoney,* 193 Mass. 285, 79 N. E. 344, 9 Ann. Cas. 1121; *Meigs* v. *Dexter,* 172 Mass. 217, 52 N. E. 75; *Hartman* v. *Thompson,* 104 Md. 389, 65 Atl. 117, 118 Am. St. Rep. 422, 10 Ann. Cas. 92.

The doctrine is that delivery does not depend upon the acts and intention of the grantor alone but rather upon the acts and intention of both grantor and grantee, and the above cases amply illustrate it.

In the case of grants obviously beneficial to the grantee the law will ordinarily presume acceptance by the grantee unless his dissent is shown. *Caledonia County Grammar School* v. *Howard,* 84 Vt. 1, 77 Atl. 877; *Moore* v. *Giles,* 49 Conn. 570. This principle of the presumed acceptance of a benefit sought to be con-

ferred applies not alone in the case of deeds but is of more general application. *Harris* v. *Harris' Estate* 82 Vt. 210, 72 Atl. 912; *Church's Exr.* v. *Church's Estate*, 80 Vt. 228, 232, 67 Atl. 549; *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, 6 L. ed. 552.

The plaintiff's argument is based, in part, upon the claim that the doctrine of the presumed acceptance of beneficial grants is applicable in this case. But it is not applicable, for this is an ordinary case of the sale of land, and the fact, somewhat relied upon, that it is beneficial to a town or city to maintain schools does not tend to show that a trade for particular lands to be used for school purposes is beneficial, much as it is that the beneficial and necessary character of food, clothing and money does not tend to bring sales of wheat, cotton and mining stock within the purview of the benign doctrine sought to be invoked.

The case of *Lessee of Mitchell* v. *Ryan*, 3 Ohio St. 377, is referred to and quoted from by the plaintiffs. The able opinion in that case was written by Judge Thurman. The opinion says, among other things, that the record of a deed is *prima facie* evidence o delivery; but that it is *prima facie* evidence only and so is subject to explanation and rebuttal; that as a general rule acceptance is necessary to constitute a good delivery, but that where a vendee has fully paid for land his acceptance of a deed of the land for which he has paid may be inferred, that where a grant is a pure and unqualified gift the presumption of acceptance will prevail without evidence of dissent. This was a case of a deed of gift from one Shannon to his daughter, a minor, and it was in applying the above principles to the case then in hand that the Court said, what the plaintiffs quote upon their brief, that: "The strictness of the ancient doctrine, in respect to the delivery of deeds, has gradually worn away until a doctrine more consistent with reason and the habits of the present generation now prevails." In view of the case the passage quoted and the context are not calculated to disturb the doctrines as to delivery and acceptance that are here well settled.

Some of the expressions in the opinion are too absolute, for it is not to be presumed that every one under all circumstances will accept whatever gift is offered him, but these expressions are to be read in the light of the case which the judge had under discussion.

It is claimed that the mayor as the chief executive officer of the city had authority to accept the deed on behalf of the city. He had no authority to do so by virtue of any vote of the city council or of any city meeting. And we do not think that by virtue of his office as mayor he had, under the charter of the city of Montpelier, authority to accept it.

Judge Dillon justly says of a mayor in an American city that: "All his powers and duties depend entirely upon the provisions of the charter or constituent act of the corporation, and valid by-laws passed in pursuance thereof." 1 Dillon. Municp. Corp. §387, (Fifth Ed.).

The charter of the city of Montpelier vests the administration of all fiscal, prudential and municipal affairs in the mayor and aldermen who in their joint capacity are called the city council. Charter §21.

The city council are to hold meetings twice in each month on days designated in the charter, and at other times when specially called together, §24, and the charter contemplates that the council shall perform their duties at such meetings, as in general must all such bodies. 2 Dillon, Municp. Corp. §501, (Fifth Ed.). The general doctrine Dillon emphasizes by the use of italics.

There is nothing in the designation of the mayor as the chief executive officer of the city, nor in the recital of his duties and powers, which directly or by implication gives him authority to act in behalf of the city in the performance of any act essential to the vesting in it of the title of real estate. The question here is not what the powers of a mayor under a charter different from that of Montpelier are nor of what the powers of a mayor ought to be.

In respect to some things the mayor is undoubtedly the agent of the city by virtue of his office, and it is frequently said that delivery to an agent of the grantee is delivery to the grantee. But when that is said it must be understood of delivery to an agent authorized to receive the instrument or to make the purchase in behalf of the grantee.

But delivery of a deed to one not having authority to accept it in behalf of the grantee does not take effect unless and until there is a delivery to and an acceptance by the grantee. The question of the relation back of such final delivery and acceptance

is not here involved.  *Meigs* v. *Dexter*, 172 Mass. 217, 52 N. E.
75; *Hawkes* v. *Pike*, 105 Mass. 560, 7 Am. Dec. 554.

Had the mayor been the agent of the city with power to
make a purchase of the land he would doubtless have had
the incidental power to accept the deed.  *Dix* v. *School District*,
22 Vt. 309.

In the case last cited a school district instructed its pru-
dential committee to purchase certain land for the site of a
schoolhouse.  The committee made the purchase and accepted
a deed, and it was held that the district was bound by such
acceptance.  The powers of the prudential committee there
corresponded, not to those of the mayor here, but rather to
those of the city council.

It was suggested in argument that there might be some
uncertainty as to the method of delivering a deed to the city
council and some embarrassment growing out of the fact that
it is a body of men rather than a single individual.  But we
do not apprehend that one who has a bill against the city for sup-
plies furnished, for services rendered, or for any other reason,
experiences any difficulty in getting his bill before the council
for approval, or that the plaintiffs here would have experienced
any difficulty in doing substantially the same thing.

The acceptance of a deed may, however, be inferred from
circumstances.  *Creeden* v. *Mahoney*, 193 Mass. 280, 79 N. E. 344,
9 Ann. Cas. 1121; *Blackwell* v. *Blackwell*, 81 N. E. 910, 196 Mass.
186, 12 Ann. Cas. 1070; *Gould* v. *Day*, 94 U. S. 405, 24 L. ed.
232.  And it is not necessary to the acceptance of a deed by the
city of Montpelier, to say nothing of other cities, that there
should be a formal vote of acceptance, nor that the deed itself
should be actually presented to the city council.

The exceptions state the claim of the plaintiffs to have been
that no question arose as to any misdescription of the land and
that the defendant claimed otherwise; and with reference to
this matter the entire transcript is referred to and is made
controlling.  The evidence of Mr. Stratton, the secretary of
the school board, was to the effect that when the deed was
handed to him by the mayor the latter requested that it be shown
to Mr. Howland for examination with reference to the descrip-
tion.  The mayor testified that at some time, and before the

making of the deed as he thought, he said to the attorney for the plaintiffs that he thought the deed should have metes and bounds and measurements and that "it would be put up to the school building committee to approve of before it went to the council;" that it was left by him with Mr. Stratton to see if that board would approve of the deed "as to description" etc.; that he never received any word from the school board, or the school building committee, as to whether they approved or disapproved of the deed as drawn; that he himself understood that the deeds, of which this was one, were deeds of the Loomis street site, understood that they purported to convey the site so designated. The attorney for the plaintiffs denied in substance what the mayor claimed to have said about submitting the deed to the school board for their approval. But this evidence does not really touch the question for the answer to which we are referred to the transcript. There is nothing in the testimony tending to show that the city council ever took any action with reference to the deed or its sufficiency or ever considered it in any respect, or recognized it in any way, and so, of course, no question of misdescription ever arose between the plaintiffs and the city council, and whether or not any question arose between others is immaterial. The finding that the deed in fact described the land for which the city had offered $5,750, and the evidence in support of that finding, indicate nothing as to whether the council knew or understood the fact to be so. The court below finds that the deed was never presented to the city council, and that the city council never voted that a warrant be drawn to pay for the land, and that the deed was never recorded, and in the finding of facts it is stated that there was no evidence that the defendant ever took actual possession of the land.

The plaintiffs introduced evidence of the custom which had obtained in the matter of the acceptance of deeds by the city council. It appeared that in some cases there had been a formal acceptance, and that in others there had been no formal acceptance, but that votes directing the mayor to issue warrants in payment had been passed.

In support of the regularity of the official acts of the council in directing the issue of a warrant to pay for lands covered by deeds to the city there is probably a presumption of an accept-

ance.  *Bacon* v. *Boston & Maine R.*, 83 Vt. 421, 434, 76 Atl. 128; *McKinstry* v. *Collins*, 76 Vt. 221, 56 Atl. 985; *Weed* v. *St. J. & L. C. R. Co.*, 64 Vt. 52, 24 Atl. 361; *Insurance Co.* v. *Wright*, 60 Vt. 515, 12 Atl. 103; *Brock* v. *Bruce*, 59 Vt. 313, 10 Atl. 93.

But here there was, as has been said, not only no vote of acceptance, but no vote in respect to the issue of a warrant, from which an acceptance might be presumed, and so the evidence as to the course taken with respect to other deeds had no tendency to aid the claim of the plaintiffs here.  The admissibility of that evidence is not under consideration.

The plaintiffs rely much upon *Beckridge* v. *The City of North Tonawanda*, 171 N. Y. 292, 64 N. E. 6.  There the plaintiff's testator presented a written proposition to sell certain property to the city for three thousand dollars to be paid on the execution and delivery of a deed.  This proposition the city accepted by resolution of the common council.  Shortly thereafter the common council directed an order to be drawn on the treasurer for the purchase price of the property, and placed in the hands of the mayor until the property should be conveyed to the city by warranty deed with abstract of title to be approved by the proper officer.  The next day the order was drawn, but it was never signed nor indorsed by the mayor and was never delivered to the grantor.  The property was bought for a public market.  The common council by resolution directed the city engineer to establish the grade of the streets about the market site and to make plans for sewers and for grading the market ground.  The city engineer went so far under this vote as to survey the property, to set monuments on the street corners, and to prepare plans for a sewer and a grade profile.  About three months later the grantor presented to the common council a written notice stating the deed had been delivered and that the title had been approved by the city attorney and requesting that the order for the purchase money already in the hands of the mayor be delivered.  At that time the council took no action, but subsequently a resolution was passed accepting the conveyance and directing the city clerk to cause it to be recorded. About this time the personnel of the city government changed, and the city clerk, without submitting the resolution to the mayor

for his approval, caused the conveyance to be registered with the treasurer of the city and to be recorded in the office of the county clerk.  Thereupon the mayor vetoed the resolution which was never passed over his veto, and so this formal acceptance was of no effect.  But the council audited and ordered paid the clerk's bill for recording the deed.  Moreover the city engineer changed the assessor's maps so that the land in question appeared as the property of the city.  By reason of this change the property was not assessed for either 1898 or 1899, but was treated as city property.  The writer of the opinion in that case states some propositions, as to the effect of the tender of the deed, which he says there could be no doubt about if the action was for specific performance, and he cites some cases at law and some in equity, among them a case which applies to valid contracts for the sale of real estate, the doctrine that courts of equity regard that as done which ought to be done.  Some of the other cases referred to are noticed elsewhere herein.  It is suggested in the opinion that delivery to the mayor or to the comptroller or to the treasurer might vest title in the city.  What the powers of those officers in that city are, we, of course, do not know. But these remarks are all disregarded when the decision of the case is reached for then the court says: " We do not hold that the mere tender of a deed by the vendor entitled him to maintain an action at law for the contract price. "  But they show that there was much more than a mere tender.  In the course of the opinion they call attention to the delivery of the deed to the clerk and by him to the treasurer, to the drawing of an order for the payment of the purchase money, to the written notice of the delivery of the deed presented to the city council, to the action of that body in auditing the county clerk's bill for recording the deed, to the actual recording of the deed, to the status of the property as non-assessable city property for two years, and having in view all of the evidence, the court of appeals held that, while it seemed to the members of that court that the evidence showed a virtual acceptance, in the view most favorable to the defendant the question of acceptance was for the jury, and the court below having directed a verdict for the defendant, the judgment thereon was reversed and a new trial ordered.

This New York case is in many respects similar to *Bartlett* v. *City of Boston*, 182 Mass. 460, 65 N. E. 827.  There a deed of the fee of land constituting a private way called Newbury street was executed   to the city of Boston.  The deed was drafted in the office of the city commissioners by their suggestion, and they, through an agent, procured the signatures of the grantors and, having received the deed, sent it to the city auditor, who having received it sent it to the registry of deeds for record, and paid the record fee.  The deed itself was returned to the auditor and listed in his office among the deeds belonging to the city.  This procedure was in accordance with a custom which had long prevailed in respect to like deeds of private ways.  The street commissioners proceeded to lay out and construct a public street over the private way in question, and assessed betterments against the grantor.  Such assessment conflicted with a provision in   the deed.  But the grantor's clerk not knowing of that provision paid the assessment.  Something more than four years later the grantor died and his executor brought suit to recover the amount so paid.  The city defended the suit, and the real question was whether the evidence warranted the finding of acceptance.  The court held that the acts of the commissioners did not bind the city and were not to be regarded as evidence of its acceptance.  But they held that outside of their doings there was evidence of an acceptance.  The court referred to the facts already recited herein, to the fact that the street must have been actually constructed some five or six years before the suit was brought, and held that there was ample evidence to sustain the finding made below, that the city had acquiesced in the acceptance of the deed by its officers on its behalf.

In each of the cases just reviewed there was, as must be seen, substantial evidence tending to show an informal and implied acceptance by the city council.

But as is well said in *Rennebaum* v. *Rennebaum*, 78 N. J. Eq. 427, 79 Atl. 309, "an acceptance cannot be inferred when the evidence clearly discloses that there was, in fact, no acceptance."

Under the claim that what they did amounted to a tender which the city was bound to accept, and that, therefore, this

action at law for the purchase price of land sold and conveyed lies, the plaintiffs cite *Jacobs* v. *Peterborough etc. R. Co.*, 8 Cush. 223; *Sears* v. *City of Boston*, 16 Pick. 357; and *Gill* v. *Bicknell*, 2 Cush. 358.

*Gill* v. *Bicknell*, was a bill in equity to compel a vendee of land to accept the deed and to pay the vendor the purchase price. The case was disposed of on two grounds, and one of them was that the plaintiff had an adequate remedy at law. In disposing of the case Chief Justice Shaw says, what the plaintiffs quote in their brief: "It is no injury to him [the plaintiff] if the defendant, on tender of the deed declined taking it. If the deed was well tendered and the defendant was liable at all he became bound to pay the money whether he received the deed or not, and the plaintiff's only ground of complaint is that the defendant did not pay the money; and there seems no good reason why an action at law for the money would not afford the plaintiff all the remedy he can ask."

But all this and all to the same effect that is intimated in the Sears case and in the Jacobs case was long ago overruled by the supreme court of Massachusetts after a careful consideration of these and other cases, "upon," to use the court's own language, "more full consideration of the question." *Old Colony R. R. Corp.* v. *Evans*, 6 Grey 25, 66 Am. Dec. 394.

A case which well demonstrates the fallacy of the doctrine thus rejected in Massachusetts is *Griswold* v. *Sabin*, 51 N. H. 167, 12 Am. Rep. 76.

These cases, and the cases therein cited, show that the rule sustained by the great weight of authority in this country, and now well settled in England, is against the contention of the plaintiffs with respect to the point now under consideration.

*Tripp* v. *Bishop*, 56 Pa. St. 424, is cited by the plaintiffs, but it is against their contention, for it makes the delivery and acceptance of a deed essential to recovery in an action for the purchase price.

*Richards* v. *Edick*, 17 Barb. 261, is cited. That case sustains the plaintiff's contention as to the effect of a tender of a sufficient deed, but in that case the court regrets that, in consequence of previous decisions in New York it does not feel at liberty,

as a tribunal not of last resort, to depart from a rule which, by the clearest reasoning, it shows to be unsound.

What was formerly decided or said in New York cases accounts for the tone of much of the opinion in *Beckridge* v. *The City of North Tonawanda*, 171 N. Y. 292, 64 N. E. 6, a case already reviewed, in the decision of which, as has been seen, the court of appeals say that they do not hold that the tender of a deed entitles a grantor to maintain an action at law for the purchase price.

The plaintiffs refer to *Hodges* v. *Green*, 28 Vt. 358. There a verbal contract was made between the parties for the sale by the plaintiff to the defendant of a meeting-house pew, property which is real estate. It was agreed that a deed of the pew should pass, and soon after this agreement the defendant called on the plaintiff for the deed. The plaintiff said he would furnish it in a few days. But before doing so he went away. He continued to be away most of the time for some months. On his return he offered the defendant a deed of the pew, but the defendant refused to take the deed or to pay for the pew. In the meantime, however, he had taken possession of the pew and had entirely destroyed its identity. Thereupon the plaintiff brought an action for the purchase price. The Court held that the case was taken out of the Statute of Frauds and that it was not for the defendant under the circumstances "to refuse to accept the deed," and that the plaintiff was entitled to recover the purchase price.

That case has been carefully explained and limited in our later cases, and has been held to have been correctly decided on the ground that the defendant having wholly destroyed the pew and its identity a deed could vest in him nothing which he had not already had and used up, and that so a deed would be a superfluous thing; and so far as there is an intimation in that case that the tender of the deed was equivalent to delivery, it has been held in the later cases that such intimation is to be understood only with reference to the very facts of that case. *Ballard* v. *Bond*, 32 Vt. 335; *King* v. *Smith*, 33 Vt. 22, 25; See also Bigelow's overruled cases, p. 241.

Whether or not there has been a complete delivery of a deed, is ordinarily a question of fact or a mixed question of law

and fact. *Lindsay* v. *Lindsay*, 11 Vt. 621. Here it is not expressly found that there was not a delivery and acceptance of the deed. But that there was not is the only reasonable inference from the facts found, and the judgment below having been in favor of the defendant, this Court assumes that the court below made the inference which the facts found compelled. *Morgan* v. *Morgan*, 82 Vt. 243, 73 Atl. 24, 137 Am. St. Rep. 1006; *Johnson* v. *Paine*, 84 Vt. 84, 78 Atl. 732; *Sowles* v. *Village of St. Albans*, 71 Vt. 418, 45 Atl. 1050; *Earle's Admr.* v. *Blanchard*, 85 Vt. 288, 81 Atl. 913.

In *Walch* v. *Insurance Co.*, 54 Vt. 351, a principal question was whether a deed which had actually been recorded had been delivered. The case was heard before referees who stated the facts in relation to the matter but did not find, or undertake to find, directly upon the question of delivery. The county court rendered judgment for the plaintiff whose contention it was that the deed had not been delivered. This Court reviewed the facts reported by the referees and held that they conclusively rebutted the presumption of delivery arising from the record of the deed, and affirmed the judgment below.

We hold that on the facts found and the inferences which the trial court was bound to draw therefrom, and so must be presumed to have drawn, there was no delivery and acceptance of the deed, and nothing equivalent in effect, that title did not pass, and that judgment rightly went in favor of the defendant.

The defendant urges that the city council was without authority to take the steps it did in the direction of the purchase of the land in question. But this claim, which divides itself into several branches, it is unnecessary to consider in view of the conclusion reached.

*Judgment affirmed*