The PEOPLE OF STATE OF COLORADO, Plaintiffs,

v.

Thomas Carson MAXWELL, Defendant.

Cr. A. No. 14076.

United States District Court.
D. Colorado.

Oct. 21, 1954.

Duke W. Dunbar, Atty. Gen., for the State of Colorado, Frank A. Wachob, Deputy Atty. Gen., and Harold A. Grant, Dist. Atty., Fifth Judicial Dist., State of Colorado, A. J. Laing, Asst. Dist. Atty., Fifth Judicial District, Leadville, Colo., for plaintiffs.

Frank Delaney, Glenwood Springs, Colo., and Robert A. Theobald, Breckenridge, Colo., for defendant.

KNOUS, Chief Judge.

This criminal prosecution for murder was instituted against the defendant in the District Court of Lake County, Colorado. On defendant's motion for change of venue, the matter later was transferred to the District Court of Summit County, Colorado. Proceeding under 28 U.S.C.A. § 1442(a) (1), defendant now has moved that the case be removed to this court.

The verified petition and the supporting affidavit of Stanley J. Morud, Captain, United States Air Force, state in essence the following facts:

Captain Morud, then stationed at Camp Hale, Colorado, was driving to Leadville, Colorado, on February 1, 1954. When he was approximately six miles from Leadville, he was passed by a two and one-half ton G. I. army truck being driven at what appeared to him an excessive rate of speed and in a reckless manner with the horn blaring. The Captain took chase but did not overtake the truck until after it had reached the city limits of Leadville, Colorado. Upon being stopped, the driver of the army truck stated to the Captain that his name was Leon Elmore, Jr., that he was a corporal in the United States Army, and that he was stationed at Camp Carson, Colorado. Captain Morud then sent his aide, Pfc. James C. Gorman, to get the Military Police. When Elmore, at Captain Morud's request, stepped down from the truck, the latter observed that Elmore had been drinking.

Pfc. Gorman went to the Leadville Police Station where he met the defendant, the Captain of Police of the City of Leadville, and inquired for the Military Police. The defendant advised him that no member of the Military Police was about. The defendant then, at the request of Gorman, accompanied him to the point where the army truck was parked where the defendant met Captain Morud. Captain Morud informed defendant that Elmore was intoxicated and had been driving in a reckless manner and was not in condition to be on the streets or on the highway and asked where he might locate the Military Police. Defendant told the Captain that the Military Police had not come in from Camp Hale, but that they would be in later. Thereupon, Captain Morud directed defendant to "hold these fellows here, and I will put in a telephone call to Camp Hale." By "these fellows", Captain Morud was referring to Elmore and his two soldier companions, Everett Sells and Albert Valenzuela.

Captain Morud then went to police headquarters and telephoned the Provost Marshal at Camp Hale who told Captain Morud to turn the three enlisted men over to the civilian authorities and for them to hold the men until the Military Police arrived from Camp Hale. Captain Morud then went back to the army truck and told the defendant to hold the men until the Military Police arrived. The defendant said that he would do so. Captain Morud and Pfc. Gorman then returned to Camp Hale.

Shortly after Captain Morud left, Elmore told the defendant that he was government property; that the defendant could not hold him, and to hell with the defendant, and thereupon he and Sells got back into the truck. Defendant told Elmore not to move the truck and that he was in the custody of the defendant. Elmore started the motor of the truck and clashed the gears. Defendant told him not to move, that if he did, defendant would shoot. About that time Officer Nelson, another member of the police force of the City of Leadville, came up and tried to persuade Elmore and Sells to get out of the truck. They refused to do so. Valenzuela joined in the argument and used very loud and profane language. Thereupon, Officer Nelson and Officer Baker, another policeman, took Valenzuela to jail. At this time Elmore again started the motor in the truck and went about three feet ahead. He was forced to stop as there was a car parked in front of the truck. The defendant walked around to the driver's side of the truck and said, "Halt there! Stop! Don't move that truck!" Elmore shifted into reverse and moved the truck back. Defendant observed that people were crossing the street to the rear of the truck and on three occasions further admonished Elmore to stop, but the latter did not do so. Whereupon the defendant fired a shot fatal to Elmore. The defendant avers that this shot was fired "with the intent and for the purpose to deter or bluff" Elmore from driving the truck away "and to hold the same until the military police had arrived" and that

defendant "did not intend to harm or kill the deceased" when the shot was fired "but through accident and misadventure, the bullet, or a part thereof, did strike and kill the deceased."

The applicable portions of the removal statute relied upon by the defendant, 28 U.S.C.A. § 1442, are as follows:

"(a) A * * * criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Any officer of the United States or any agency thereof, or *person acting under him,* for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals * * *." (Emphasis supplied.)

The procedure for removal is set out in 28 U.S.C.A. § 1446, and the applicable portions of that section are as follows:

"(a) A defendant * * * desiring to remove any * * * criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him * * * to removal together with a copy of all process, pleadings and orders served upon him * * * in such action.

\* \* \* \* \* \*

"(e) Promptly after the filing of such petition and bond the defendant * * * shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."

In pursuance to such notice the People of the State of Colorado have appeared through their Attorney General and the District Attorney for the Fifth Judicial District, and moved that this criminal prosecution be remanded to the District Court of Summit County, Colorado.

■ In 1950, coincident with the adoption of the Uniform Code of Military Justice, the Congress enacted 50 U.S.C.A. § 738, which provided, inter alia, that:

"When any * * * criminal prosecution is commenced in any court of a State of the United States against any member of the armed forces of the United States on account of any act done under color of his office or status, or in respect to which he claims any right, title, or authority under any law of the United States respecting the armed forces thereof, or under the law of war, such suit or prosecution may * * * be removed for trial into the district court of the United States * * *."

The state contends that as a result of this enactment, the provisions, supra, for removal contained in § 1442(a) (1), Title 28, adopted in 1948, and relied upon by the defendant, are not available to him. The state's argument as I understand it, is that since § 738, Title 50, supra, a later enactment, specifically makes provision for the removal of an action "against any member of the armed forces", military officers are excluded by implication from the "officer[s] of the United States" category covered by earlier § 1442(a) (1), Title 28; this being so, it is said, a nonmilitary person acting under the direction of a military officer, a fortiori, is not covered by that section and that, therefore, defendant is not a person acting under an officer of the United States within the meaning of § 1442(a) (1), supra.

My study of the legislative history of both enactments, which in the interest of brevity will not be included here, convinces me that by the enactment of § 738, Title 50, Congress never intended by implication or otherwise, to supersede or

repeal the right of removal granted by § 1442(a) (1), supra, to a "person acting under" any officer of the United States, within the conditions therein detailed by reason of the circumstance that such officer of the United States also happened to be a member of the armed forces. What effect, if any, the later enactment may have had on the earlier with respect to the right of or procedure for removal by a member of the armed forces is of no moment here since the defendant is outside that category. This contention, therefore, must be resolved against the State.

The State next urges that the showing of defendant is insufficient to meet the conditions of § 1442(a) (1), supra, which insofar as here is in concern limits removal to "(1) Any officer of the United States * * * or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any act of Congress for the apprehension * * * of criminals * * *."

■ It has been held that the term "criminals" is a word of broad significance and includes those who have committed an offense of the most trifling infraction as well as those guilty of the most heinous crimes. Creeden v. Boston M. R. R. Co., 193 Mass. 280, 79 N.E. 344, 346.

■ "Apprehension" is defined as the "seizure, taking, or arrest of a person on a criminal charge." The term "apprehension" is applied exclusively to criminal cases and "arrest" to both civil and criminal cases. Black's Law Dictionary, 4th edition.

■ A captain in the United States Air Force, as was the status and rank of Captain Morud, is also in my view an "officer of the United States" within the meaning of § 1442(a) (1), supra. See United States v. Canella, D.C., 63 F.Supp. 377, affirmed 9 Cir., 157 F.2d 470. Captain Morud, although a member of the United States Air Force, had authority to apprehend a member of a different branch of the armed forces. Such is

made to appear from 50 U.S.C.A. § 561 (b), Uniform Code of Military Justice, an Act of Congress which provides:

"Any person authorized under *regulations* governing the armed forces to apprehend persons subject to this chapter * * * may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it." (Emphasis supplied.)

and Section 28 of the Army Regulations No. 600–10, page 11, dated December 15, 1953, which in part is as follows:

"28. Joint jurisdiction in Maintenance or Order. * * * (a) * * * Officers * * * of the Armed Forces are authorized and directed to take corrective measures, including apprehension if necessary, in the case of any member of the Armed Forces guilty of committing a breach of the peace, disorderly conduct, or any other offense which reflects discredit upon the service. * * *"

50 U.S.C.A. § 705, also a congressional enactment, and a part of the Uniform Code of Military Justice, provides that:

"Any person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct."

Captain Morud possessed the authority to seek the aid of civilian police by section 5, page 2 of the Army Regulation last hereinabove referred to, which specifies:

"(d) When an offense is committed * * * civilian police may be requested to take the offender into custody when no military police are available."

So employed, the term "custody", as understood by me, implies the detention and restraint of a person against his will.

Thus, in my opinion the defendant has brought this criminal prosecution within the purview of § 1442(a) (1), supra, so as to permit its removal to this Court.

As may be inferred from the foregoing, the defendant's petition and supporting affidavits, in my opinion, meet the requirements of sufficiency prescribed in State of Colorado v. Symes, 286 U. S. 510, 516, 52 S.Ct. 635, 637, 76 L.Ed. 1253 and State of Maryland v. Soper, 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449. In passing on a motion to remand, as stated in the opinion in the former:

"No question of guilt or innocence arises and no determination of fact is required but it must fairly appear from the showing made that petitioner's claim is not without foundation and is made in good faith."

Accordingly, it is

Ordered that the motion to remand be and the same is hereby denied.